**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                    Plaintiff(s),
          v.                                **REPORT & RECOMMENDATION**
                                            **10-CR-6096**
JAMES KENDRICK,
PABLO PLAZA (DOB 1972), and
JANINE PLAZA PIERCE,

                    Defendant(s).

_____

### Preliminary Statement

On July 17, 2012, a federal grand jury returned a Second Superceding Indictment against the defendants, which included Counts for federal firearm and drug related crimes, as well as murder while engaged in a drug crime. See Second Superceding Indictment (Docket # 268). By text Order of Judge Charles J. Siragusa dated July 8, 2010, all pre-trial motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Docket # 17). Currently pending before the Court are the defendants James Kendrick, Pablo Plaza (DOB 1972), and Janine Plaza Pierce's Pre-Trial Joint Motions. (Docket # 365). The Government filed papers in opposition to these motions (Docket # 444), and the defendants thereafter filed supplemental papers (Docket ## 449, 489).

On June 27, 2013, a hearing was held and arguments were heard from the parties' attorneys with respect to the defendants' Pre-Trial Joint Motions. During the June 27th hearing, the majority of

the defendants' Pre-Trial Joint Motions were resolved or deemed moot.[1]  On July 17, 2013, defendant Kendrick filed a supplemental motion to dismiss Counts 14 and 15 on jurisdictional grounds (Docket # 485), which the Government moved to strike (Docket # 486).  A hearing was held on August 5, 2013 with respect to these motions.  At the conclusion of the hearing, the Court reserved decision on several of the motions, scheduled suppression hearings for other motions and requested further briefing on several issues.[2]

The following is my Report and Recommendation as to those aspects of the defendants' Pre-Trial Joint Motions that I reserved Decision on during the June 27th hearing, as well as the

---

[1] With the cooperation of all counsel, the motions resolved or determined during the hearing included: motions (1) for Rule 16 discovery; (2) for early disclosure of Brady materials; (3) for a Rule 12(b)(4)(B) notice; (4) for co-conspirator statements; (5) for reservation of right to make additional motions; (6) for Rule 404(b) evidence; (7) for an audibility hearing; (8) for preservation of rough notes; (9) for preservation of evidence; (10) for suppression of identification procedures; (11) to dismiss Count 10 as multiplicitous and unconstitutionally vague; and (12) to dismiss Count 3 on grounds of improper venue.  The Court relies on the transcript of proceedings from the June 27, 2013 hearing for confirmation of the resolution or determination of these and other motions argued on that date.

[2] Separate factual hearings were held and briefs filed with respect to suppression motions filed by defendants Kendrick, Cruz, Plaza (DOB 1972), and Plaza-Pierce.  In addition a factual hearing was held on the defendants motion for sanctions based on the loss of evidence and supplemental briefing on this issue was not closed until October 24, 2014.  Separate Reports and Recommendations will be issued as to these suppression and sanction motions.

supplemental motions which I reserved Decision on during the August 5th hearing.

### Discussion

I.    Motion to Dismiss Counts 14 and 15: Defendants move to dismiss Counts 14 and 15 on two distinct jurisdictional grounds. First, the defendants assert that this Court lacks jurisdiction over Count 14 because "New York State has sole jurisdiction for crimes committed on Indian Country involving non-Indians." Second, the defendants argue that Counts 14 and 15 must be dismissed because the Constitution's Commerce Clause does not confer federal jurisdiction because "under the facts of this case" there is an insufficient connection between narcotics and the substantive crime charged.   See Defendants' Memorandum of Law (hereinafter "Def. Memo") annexed to Docket # 365 at pp. 2-4.   For the reasons set forth below, it is my Report and Recommendation that the defendants' first argument be denied as being without merit and that the defendants' second argument be denied without prejudice to renew at trial at the conclusion of the Government's case.

Jurisdiction for Crimes Committed on Indian Lands: The gist of the defendants' first argument is that the State of New York has "exclusive jurisdiction" to prosecute Count 14 because the crime charged was allegedly committed on American Indian lands.   See Def. Memo at p. 2.   "To accommodate the competing Indian and federal interests" as to crimes committed on Indian Territory, Congress

3

enacted two statutes: the Indian Country Crimes Act found at 18 U.S.C. § 1152 and the Indian Major Crimes Act found at 18 U.S.C § 1153.  See United States v. Markiewicz, 978 F.2d 786, 797 (2d Cir. 1992).  The Indian Country Crimes Act provides that federal enclave laws[3] "shall extend to the Indian Country."  However, the Act also provided that enclave laws would not extend to offenses committed by one Indian against the person or property of another Indian.  Markiewicz, 978 F.2d at 798.  Thereafter, and in response to the Supreme Court's decision in Ex parte Crow Dog, 109 U.S. 556 (1883), Congress passed the Indian Major Crimes Act which conferred federal court jurisdiction over certain Indian-against-Indian "major" offenses committed within Indian country.  United States v. Markiewicz, 978 F.2d at 798.

Neither of these statutes impacts the Court's jurisdiction over Count 14.  Count 14 does not involve an "Indian on Indian" crime for which the Indian Major Crimes Act would apply.  And the Indian Country Crimes Act and its exceptions apply only to federal laws "where the situs of the crime is an element of the offense"

---

[3] Federal enclave laws include crimes such as: arson, see 18 U.S.C. § 81; assault, see 18 U.S.C. § 113; maiming, see 18 U.S.C. § 114; theft, see 18 U.S.C. § 661; receiving stolen property, see 18 U.S.C. § 662; using false pretenses, see 18 U.S.C. § 1025; murder, see 18 U.S.C. § 1111(b); manslaughter, see 18 U.S.C. § 1112; attempted murder, see 18 U.S.C. § 1113; conspiracy to murder, see 18 U.S.C. § 1117; kidnapping, see 18 U.S.C. § 1201(a)(2); destruction of buildings or property, see 18 U.S.C. § 1363; robbery, see 18 U.S.C. § 2111; offenses against United States seamen, see 18 U.S.C. §§ 2191-93; and crimes involving sexual abuse, see 18 U.S.C. §§ 2241-44.  See United States v. Markiewicz, 978 F.2d at 797.

and accordingly does "not affect the application of general federal criminal statutes to Indian reservations." <u>United States v. Yannott</u>, 42 F.3d 999, 1004 (6th Cir. 1994); <u>see also</u> <u>United States v. Blue</u>, 722 F.3d 383, 384 (8th Cir. 1983)("18 U.S.C. § 1152 and its exceptions do not extend or restrict the application of general federal criminal statutes to Indian reservations" and apply "only to federal enclave laws and does not encompass federal laws that make actions criminal where committed.").

Thus, a federal court is not divested of jurisdiction over defendants who are charged with committing general federal crimes on Indian Land.  A criminal statute alleges a general federal crime when it involves "federal laws of general applicability that make certain actions criminal regardless of where they are committed." <u>United States v. Yannott</u>, 42 F.3d at 1004 ("[F]ederal courts retain jurisdiction over violations of federal laws of general, non-territorial applicability.").  For example, it has been held that federal court jurisdiction is proper for prosecuting (1) drug distribution in violation of 21 U.S.C. § 841(a)(1) (<u>see</u> <u>United States v. Blue</u>, 722 F.2d 383 (8th Cir. 1983); <u>United States v. Brisk</u>, 171 F.3d 514 (7th Cir. 1999)); (2) felon in possession of a firearm and possession of an unregistered firearm in violation of 18 U.S.C. § 922(g) and 26 U.S.C. § 5861(d) (<u>see</u> <u>United States v. Yannott</u>, 42 F.3d at 1004); (3) conspiracy to obstruct law enforcement in violation of 18 U.S.C. § 371 (<u>see</u> <u>United States v.</u>

Dodge, 538 F.2d 770, 776 (8th Cir. 1976)); (4) acting as an accessory after the fact in violation of 18 U.S.C. § 3 (see United States v. Head, No. 11-CR-0089, 2011 WL 2912695, at **3-4 (D. Minn. Apr. 22, 2011), adopted by 2011 WL 2888156 (D. Minn. July 18, 2011)); (5) arson crimes in violation of 18 U.S.C. § 844(i) (see United States v. Markiewicz, 978 F.2d at 801); and (6) retaliating against a federal witness in violation of 18 U.S.C. § 1513(b) (see United States v. Smith, 387 F.3d 826, 829-30 (9th Cir. 2004)).

Here, Count 14 charges the defendants with violating 21 U.S.C. § 848(e)(1)(A) and alleges that while engaging in a conspiracy to distribute cocaine, crack cocaine, and heroin the defendants intentionally killed and caused the intentional killing of Francisco Santos. To sustain a conviction for violating 21 U.S.C. § 848(e)(1)(A), the Government need not prove any fact regarding the situs of the crime. See KEVIN F. O'MALLEY, ET AL., FEDERAL JURY PRACTICE & INSTRUCTIONS § 66:01 (6th ed. 2008). Because the situs of the crime is not an element of the offense, the crime charged here is not an enclave law and, as a result, the crime does not fall within the Indian Country Crimes Act (18 U.S.C. § 1152) or its exceptions. See United States v. Wadena, 152 F.3d 831, 842 (8th Cir. 1998). In sum, Count 14 charges a federal drug offense involving a crime of general applicability that is not dependent on the location of the offense. This Court's jurisdiction is properly invoked and Count 14 may be prosecuted in federal court,

6

notwithstanding the fact that the death of the victim allegedly occurred on Indian Lands.[4]

Commerce Clause: Defendants' second jurisdictional argument is based on the Commerce Clause of the United States Constitution. Both Counts 14 and 15 charge the defendants with violating 21 U.S.C. § 848(e)(1)(A) by murdering Francisco Santos (Count 14) and Ryan Cooper (Count 15) while engaging in a crime punishable by 21 U.S.C. § 841(b)(1)(A), specifically a conspiracy in violation of 21 U.S.C. § 846 as charged in Count 1 of the Second Superceding Indictment. Although the defendants sometimes appear to conflate their commerce clause arguments, the gist of their contention seems to be that Counts 14 and 15 violate the Commerce Clause on two independent grounds. First, defendants argue that because the charged narcotics conspiracy does not require any actual substantive conduct, but merely seeks to punish an "unlawful agreement to engage in [narcotics] trafficking," no illegal economic "activity" has occurred and hence Commerce Clause jurisdiction is not implicated. See Def. Memo at p. 4 (emphasis

---

[4] The defendants' reliance on the United States v. McBratney, 104 U.S. 621 (1881) and Duro v. Reina, 495 U.S. 676 (1990) cases is misplaced. In McBratney, the crime charged involved a federal enclave law and not an offense of general applicability. In Duro, the petitioner had been charged with, inter alia, murder in violation of 18 U.S.C. § 1153 "Offenses committed within Indian country." Thus, in Duro, the situs of the crime was an element of the offense charged. In the case at bar, Count 14 charges a crime of general applicability - not a federal enclave law - and the situs of the crime is not an element of the charged offense. Hence the defendants' reliance on McBratney and Duro is not persuasive.

added).    Second,    relying    on    the    testimony    proffered    by    the
Government at the detention hearing, the defendants argue that "the
Commerce Clause does not confer federal jurisdiction because the
murder was not drug-related."  See id. at pp. 4-6.

The defendants' argument that Counts 14 and 15 violate the
Commerce Clause because unlike other economic activity properly
subject to federal court jurisdiction, "a narcotics conspiracy does
not require any actual conduct" is without merit.  See id. at p. 4.
It is beyond dispute that "narcotics trafficking represents a type
of activity that Congress reasonably found substantially affected
interstate commerce."  United States v. Genao, 79 F.3d 1333, 1336
(2d Cir. 1996).  Defendants fail to cite to any cases adopting
their view that Congress is without authority to criminalize an
agreement to engage in drug trafficking and the Court has not
located any cases supporting their argument.  It is true that the
government need not prove that a defendant was engaged in actual
drug    distribution    to    sustain    a    conviction    under    section
848(e)(1)(A).  Rather, "[t]he defendant need only be engaging in an
offense punishable under section 841(b)(1)(A), which includes
conspiracy to commit such an offense."  United States v. Santos,
541 F.3d 63, 68 (2d Cir. 2008).  However, contrary to the
defendants' arguments, more than a "meeting of the minds" is
required for the defendants to be convicted of the conspiracy
alleged in Counts 14 and 15.  As the court made clear in Santos,

the government must not only prove that there was an agreement to engage in drug trafficking, but that a defendant voluntarily <u>joined and participated</u> in the conspiracy.   "Once the existence of a conspiracy has been established, the government must prove that the person charged knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it."   <u>Id.</u> at 71 (citation and internal quotation marks omitted).   Moreover, the Second Circuit has specifically determined that the federal drug conspiracy statute constitutes a valid exercise of Congress's jurisdictional power pursuant to the Commerce Clause.   <u>United States v. Walker</u>, 142 F.3d 103, 111 (2d Cir. 1998); <u>United States v. Genoa</u>, 79 F.3d at 1336.   In sum, the defendants' claim that Counts 14 and 15 must be dismissed as a matter of law because they charge crimes that exceed Congress's Commerce Clause power should be denied.

The second ground for the defendants' Commerce Clause argument is that neither the murder of Santos nor Cooper were "drug related."   As I indicated during the hearing on the motion, this specific argument is premature and must wait the Government's proof at trial.   There is no question, and the Government agrees, that "§ 848(e)(1)(A) requires a 'substantive,' not merely 'temporal' connection between a charged drug offense and a charged killing" to sustain a conviction.   <u>United States v. Aguilar</u>, 585 F.3d 652, 660 (2d Cir. 2009).   But the fact that there may have been multiple

motives for a murder does not deny a federal court jurisdiction so long as one of the motives provides a nexus between the charged narcotics trafficking and the killing. "[A] single drug-related motive for a killing, even among many non-drug-related motives, satisfies § 848(e)(1)(A)'s 'substantive connection' requirement." Id. at 661.

The defendants argue that "[b]ased on the government's [detention hearing] proffer, there is no substantive connection between the murder and the drug conspiracy." See Def. Memo at p. 7. However, the government's proffer at a detention hearing is by no means the equivalent of the government's proof at trial. See United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986)("[A] detention hearing is not to serve as a mini-trial."). It is different both in terms of admissibility and relevance. While the strength of the government's case is often a factor the prosecution relies upon in seeking detention, the government is not required to set forth all the evidence or even any of the evidence it intends to introduce at trial. Indeed, in some cases the indictment itself creates a presumption of flight and danger. It will be at the trial of this case when the Government must prove a legally sufficient relationship between Cooper or Santos's murder and the underlying drug conspiracy charged in Counts 14 and 15. Whether the Government can meet that burden is a uniquely factual determination that the jury will make after hearing all of the

10

evidence.   To the extent defense counsel believes the Government's proof in its direct case failed to meet its burden as a matter of law, they may, of course, seek to dismiss Counts 14 and 15 pursuant to Rule 29 of the Federal Rules of Criminal Procedure.   Challenging the factual predicate for jurisdiction on an "as applied" basis at this juncture of the prosecution is premature and inappropriate. "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."   United States v. Alfonso,   143 F.3d 772, 776-77 (2d Cir. 1998).

Based on the foregoing, it is my Report and Recommendation that, except for that aspect of the defendants' motion seeking dismissal of Counts 14 and 15 because of the lack of a substantive factual connection between the underlying drug conspiracy and the alleged murders of Santos and Cooper, the defendants' motions to dismiss Counts 14 and 15 of the Second Superceding Indictment on jurisdictional grounds (including defendant Kendrick's supplemental motion found at Docket # 485) should be denied.   Further, it is my Report and Recommendation that the motion to dismiss Counts 14 and 15 for failure to prove a drug related motive for the murder of Santos and Cooper should be denied without prejudice to renew at the close of the Government's case-in-chief at trial.

II.   "Aiding and Abetting" Liability for a Violation of Section 848(e)(1)(A): Defendants also move to dismiss Counts 14 and 15 on grounds that general aider and abettor liability under 18 U.S.C. § 2 is inapplicable to murders charged under 21 U.S.C. § 848(e).  See Def. Memo at pp. 30-44.  In the alternative, should the Court decline to dismiss Counts 14 and 15 on these grounds, defendants argue that the Government's reference to 18 U.S.C. § 2 "must be stricken."  Id. at p. 30.

As to the claim that Counts 14 and 15 must be dismissed because the charges are "invalid" for alleging liability pursuant to 18 U.S.C. § 2, I agree with the Government that this claim is foreclosed by the Second Circuit's decision in United States v. Walker, 142 F.3d 103 (2d Cir. 1998)("[W]e hold that aider and abettor liability is available for violations under subsection (e)" of 21 U.S.C. § 848.).   Accordingly, it is my Report and Recommendation that the defendants' motion to dismiss Counts 14 and 15 as invalid for charging accessorial liability pursuant to § 2 of Title 18 be denied.

The defendants' alternative argument is more nuanced.  While conceding that "Walker contains language that is problematic," defendants state in their reply brief that they "do not argue that accessorial liability is inapplicable to them," but rather that the use of the words "aiding and abetting" in any jury instruction are objectionable.  See Defendants' Reply Memorandum of Law (Docket #

12

449) at p. 9 n.2. Defendants argue that Section 848(e)(1)(A) specifically delineates the accessorial theories that are available to the Government to prove a defendant's criminal liability for the murder of Santos or Cooper - that the defendant "counseled, commanded, induced, procured, or caused" the killings. According to the defendants, expanding the specific accessorial theories found in Section 848(e)(1)(A) to include the terms "aiding and abetting" as found in Section 2 would allow the jury to convict the defendants "with the much more inclusive means of committing accomplice liability than that which is specifically set forth in" 848(e)(1)(A) and could result in an "unjust conviction." Id. at p. 12.

It is true that in Walker the Second Circuit determined aider and abettor liability was available in Section 848(e)(1)(A) because the statute itself "expressly includes language of aiding and abetting." United States v. Walker, 142 F.3d at 113 (emphasis added). But, there are many ways a defendant assists a principal in the commission of a crime. Aiding and abetting are not terms that a jury would ordinarily understand without further instruction from the Court. Indeed, pattern jury instructions advise courts to explain the terms and offer varying suggestions on explanations depending on the crime charged and the proof at trial. KEVIN F. O'MALLEY, ET AL., FEDERAL JURY PRACTICE & INSTRUCTIONS § 18:01 (6th ed. 2008). As Walker confirms, when one "counsels, commands, induces

13

or procures" criminal conduct, one is aiding and abetting criminal conduct under 18 U.S.C. § 2.  Here, depending on the proof, it very well may be that counsel will agree with the trial judge as to what specific terms of accessorial liability need to be defined in jury instructions based on the trial evidence.   Whether the terms "aiding and abetting" need be or will be specifically mentioned or defined is best left to the trial judge after all the proof has been submitted.   Accordingly, it is my Report and Recommendation that the defendants' motion to strike any reference to 18 U.S.C. § 2 be denied.

III.   Motion to Dismiss Count 1: Defendants move to dismiss Count 1 of the Second Superceding Indictment and, if that motion is not granted, alternatively seek inspection of instructions given to the Grand Jury regarding drug quantity proof.  For the reasons that follow, it is my Report and Recommendation that both aspects of the defendants' motion de denied.

Count 1 charges the defendants with a narcotics conspiracy pursuant to 21 U.S.C. § 846.  Specifically, Count 1 alleges that from about 1993 until March 2011, in the Western District of New York and elsewhere, the defendants conspired with each other and others to possess with intent to distribute and distribute narcotics.   Count 1 lists various types of narcotics (cocaine, cocaine base, heroin, and marijuana) along with the minimum weight of the various substances that are alleged to be relevant to the

14

conspiracy alleged in Count 1.  The defendants argue that the charge must be dismissed "because it does not adequately specify the amounts attributable to each individual defendant."  See Def. Memo at p. 44.

In United States v. Mullen, 450 F. Supp. 2d 212 (W.D.N.Y. 2006), Magistrate Judge Foschio, in a Report and Recommendation adopted by Judge Arcara, rejected the argument the defendants make here:

> It is established law in this circuit that indictments alleging a violation of 21 U.S.C. § 846 are subject to the same standards applicable to substantive counts alleging violations of 21 U.S.C. § 841. See United States v. Macklin, 927 F.2d 1272, 1276 (2d Cir.) ("These principles apply ... [to] conspiracies charged under 21 U.S.C. § 846"), cert. denied, 502 U.S. 847 (1991); United States v. Benjamin, 72 F.Supp.2d 161, 169 (W.D.N.Y. 1999).  "[A]s an indictment is sufficient if it charges the offense using the words of the statute, an indictment under Section 846 'need only allege the existence of a narcotics conspiracy, a relevant time frame, and the statute alleged to be violated.' " Benjamin, supra, at 169 (quoting Macklin, supra, at 1276) (citing United States v. Bermudez, 526 F.2d 89, 94 (2d Cir. 1975), cert. denied, 425 U.S. 970 (1976)). See also United States v. Pike, supra, at *1-2 (rejecting motion to dismiss count alleging violation of 21 U.S.C. § 846 as insufficient where count "tracks the language of the statute" and "alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated") (citing Bermudez, supra); United States v. Vondette, 248 F.Supp.2d 149, 161 (S.D.N.Y. 2001) (Indictment under 21 U.S.C. § 846 sufficient if it "tracks the language of the statute and states the

approximate time and place of the alleged crime."). In Pike, like Count 2, the challenged count "tracks the language of the statute, cites the relevant statutory provisions, identifies the nature and purpose of the alleged illegal agreement, sets forth the alleged location and time frame of the conspiracy and identifies some of its purported members." Pike, supra, at *2.

United States v. Mullen, 450 F. Supp. 2d at 218.

Count 1 of the Second Superceding Indictment satisfies the standards summarized in Mullen and provides constitutionally sufficient factual details by adequately "tracking" the statutory language. See Hamling v. United States, 418 U.S. 87, 117 (1974)("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.").

Having determined that Count 1 is legally sufficient on its face, the Court can discern no legal or factual justification for ordering the Government to disclose the legal instructions given to the Grand Jury in this case regarding drug quantities. The Government need not show that a particular defendant was actively engaged in drug distribution in order to be liable for a drug related murder charge under 21 U.S.C. § 848(e)(1)(A). United States v. Santos, 541 F.3d 63, 73-74 (2d Cir. 2008). "The disclosure of grand jury instructions requires a showing of

16

particularized need." United States v. Luquis, 166 F. Supp. 2d 776, 780 (S.D.N.Y. 2001)(internal quotation marks and citations omitted). No such showing has been made here. To the extent issues arise at trial regarding the specific narcotic substances allegedly being trafficked or the weight of such substances, defense counsel may propose to the trial judge the use of a special verdict form.

IV. Motion to Dismiss Counts 4 and 7:

The defendants have moved to dismiss Counts 4 and 7 on various grounds.

1. Duplicitous: Defendants James Kendrick and Pablo Plaza (DOB 1972) move to dismiss Counts 4 and 7 as duplicitous. See Def. Memo at p. 59. Counts 4 and 7 charge these defendants with "Possession of Heroin with Intent to Distribute" in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2. The only difference between the two Counts is the address at which the alleged unlawful possession took place. Count 4 alleges 87 Thomas Street in Rochester and Count 7 alleges 80 Isabelle Street in Rochester.

Defendants assert that these Counts suffer from the same defect in that they are duplicitous. According to the defendants "[g]iven the almost 3 year time frame, these counts make clear that they do not cover one discrete act of possession with intent to distribute," but rather "aggregate different quantities at

17

different times during this lengthy period." <u>See</u> Def. Memo at p. 61.   The defendants claim the Government charged numerous and distinct transactions over a long period of time at each residence in order to aggregate the weight of the heroin thereby "racheting" up the "applicable penalty provisions by aggregating the quantity of heroin involved in these multiple, separate incidents to 1 kilogram or more." <u>Id.</u>

"An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of [Federal Rule of Criminal Procedure] 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." <u>United States v. Sturdivant</u>, 244 F.3d 71, 75 (2d Cir. 2001)(citations omitted).  The Second Circuit "has long held that 'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.'" <u>United States v. Olmeda</u>, 461 F.3d 271, 281 (2d Cir. 2006)(quoting <u>United States v. Tutino</u>, 883 F.2d 1125, 1141 (2d Cir. 1989)).  The Court has remarked that in some circumstances "duplicity may actually inure to a defendant's benefit by limiting the maximum penalties he might face if he were charged and convicted on separate counts for what amounts to a single scheme," as well as avoiding "the defendant's portrayal to the jury as the

perpetrator of [multiple] crimes." <u>Olmeda</u>, 461 F.3d at 281 (internal quotations and citations omitted).

Here, I find that it was appropriate for the Government to aggregate the defendants' separate heroin sales between 2007 through October 2009 at the Isabelle Street and Thomas Street addresses for purposes of charging the defendants in Counts 4 and 7. The Second Circuit has specifically held that a prosecutor may aggregate acts to meet jurisdictional amounts "where a relationship between the various offenses can be shown." <u>See</u> <u>Tutino</u>, 883 F.2d at 1141. The Second Superceding Indictment alleges that for several years the defendants were involved in an on-going narcotics trafficking conspiracy and during the conspiracy they possessed with intent to distribute various amounts of heroin at the Isabelle and Thomas Street locations. Because the defendants' actions could be characterized as part of a single continuing scheme it was appropriate for the Grand Jury to aggregate the defendants' acts in a single count. <u>See</u>, <u>e.g.</u>, <u>Tutino</u>, 883 F.2d at 1141 (upholding aggregation of several heroin sales into a single count of distributing heroin because the sales were part of a single continuing scheme). If the proof at trial does not support a continuous unified scheme the trial judge would be free of course to reconsider whether the charges are duplicitous. Accordingly, it is my Report and Recommendation that the defendants' motion to dismiss Counts 4 and 7 as duplicitous be denied.

2.   <u>Unconstitutionally Vague</u>: Defendants Kendrick and Plaza (DOB 1972) move to dismiss Counts 4 and 7 on the ground that they are unconstitutionally vague.  <u>See</u> Def. Memo at p. 63.  Defendants argue that "[t]he allegations in Counts 4 and 7 are legally insufficient because they lack the specificity required under the Sixth Amendment and" Rule 7(c).  <u>Id.</u>  Defendants take particular issue with the fact that "the allegations lack specificity as to the dates on which [the defendants are] alleged to have committed the crimes" and the time period covered by these Counts spans "nearly three years – a substantial period of time by any standard."  <u>Id.</u>  The defendants maintain that the lack of specificity with respect to the dates upon which they allegedly committed the crimes they are charged with will "fundamentally – and unconstitutionally" prejudice them in their ability to defend themselves against the charges.  <u>Id.</u>  The defendants contend that such "broad, general, and vague allegations are" prohibited by the Sixth Amendment.  <u>Id.</u>

As discussed earlier in this Report and Recommendation, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974). Generally, an indictment will be deemed sufficient if it "tracks

the language of the statute" and states the approximate time and place of the alleged crime.  See United States v. Pirro, 212 F.3d 86, 93 (2d Cir. 2000)(citations omitted); see also United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992)("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.")(quoting United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975)).

Here, Counts 4 and 7 are not unconstitutionally vague.  Counts 4 and 7 charge defendants Kendrick and Plaza (DOB 1972) with possession of heroin with intent to distribute 1 kilogram or more of heroin at 87 Thomas Street and 80 Isabelle Street in Rochester, New York, from 2007 through October 2009.  The allegations in these Counts apprise the defendants of the charges against them, as well as the approximate time and place of the alleged unlawful acts, so that they may be able to properly defend themselves against said charges.  The Counts have sufficient detail that the defendants would be able to plead double jeopardy in a future prosecution based on the same set of events.  Accordingly, it is my Report and Recommendation that the defendants' motion to dismiss Counts 4 and 7 on grounds that they are unconstitutionally vague be denied.

3. Multiplicitous:  Defendants Kendrick and Plaza (DOB 1972) move to dismiss Counts 4 and 7 on grounds that they are multiplicitous.  See Def. Memo at p. 64.  Defendants assert that

the charges "in both Count 4 and Count 7 [are] identical –
distribution of, and possession with the intent to distribute,
heroin under 21 U.S.C. § 841(a)(1)," and, except for the location,
the factual allegations in these charges are also identical.  Id.
Defendants maintain that since "Counts 4 and 7 charge a single
course of continuous conduct (distribution and possession with the
intent to distribute), undertaken by the same people [the
defendants], involving the same drug (heroin), during the same time
period (2007-October 2009)," the fact that these acts "may have
been committed at two different places does not make it two
separate crimes subject to separate punishment."  Id. at p. 65.
Rather, defendants argue that the allegations in these Counts
"constitute a single violation of § 841(a) and should not be
charged in two separate counts."  Id.

"An indictment is multiplicitous when it charges a single
offense as an offense multiple times, in separate counts, when, in
law and fact, only one crime has been committed."  United States v.
Chacko, 169 F.3d 140, 145 (2d Cir. 1999).  A multiplicitous
indictment violates the Double Jeopardy Clause of the Fifth
Amendment because it subjects "a person to punishment for the same
crime more than once."  Id.  In determining whether separate counts
charge the same offense more than once (i.e., are multiplicitous
thereby violating the Fifth Amendment's Double Jeopardy Clause),
courts often apply the test set out by the Supreme Court in

22

Blockburger v. United States, 284 U.S. 299 (1932). Under Blockburger, courts "determine whether there are two offenses or only one [by] whether each provision requires proof of a fact which the other does not." 284 U.S. at 304.

Here, I find that the Government properly charged two separate offenses, because the allegations in Counts 4 and 7 do not amount to merely one offense, as each Count does in fact require proof of a fact which the other does not. Specifically, in order to convict the defendants of Count 4, a jury would have to find that the defendants possessed with intent to distribute 1 kilogram or more of heroin at 87 Thomas Street, and would <u>not</u> have to find that the defendants possessed with intent to distribute 1 kilogram or more of heroin at 80 Isabelle Street (the location charged in Count 7). Likewise, in order to convict the defendants of Count 7, the jury would have to find that the defendants possessed with intent to distribute 1 kilogram or more of heroin at 80 Isabelle Street, and would <u>not</u> have to find that the defendants possessed with intent to distribute 1 kilogram or more of heroin at 87 Thomas Street (the location charged in Count 4). <u>See</u> <u>United states v. Jefferson</u>, 302 F. Supp. 2d 1295, 1298 n.3 (M.D. Ala. 2004)("The vast majority of courts has allowed multiple § 841(a) counts to stand where each count is for a different type of drug or the drugs were in different locations."). Moreover, the Government has stated that the evidence it will present at trial involves demonstrating that

both the Thomas Street and Isabelle Street locations were used by the defendants to process heroin for street sales, and the heroin processed at one location was different from the heroin processed at the other location.  In other words, the "same" heroin was not possessed by the defendants at the different addresses.  Instead, the defendants possessed, processed, and intended to distribute at least 1 kilogram or more of heroin at each of the two locations, and the heroin possessed at each location was not the "same."  At this juncture at least, Counts 4 and 7 charge two separate offenses, not only one and, therefore, are not multiplicitous. Accordingly, it is my Report and Recommendation that defendants' motion to dismiss Counts 4 and 7 on grounds that they are multiplicitous be denied.

  V. Motion to Dismiss Counts 6 and 9 as Multiplicitous: Defendants Kendrick and Plaza (DOB 1972) move to dismiss Counts 6 and 9 on grounds that they are multiplicitous.  Counts 6 and 9 charge the defendants with "Possession of Firearm in Furtherance of Drug Crimes," in violation of 18 U.S.C. §§ 924(c)(1) and (2). See Second Superceding Indictment (Docket # 268).  The only difference between the two Counts is the location of where the crimes allegedly took place.[5]  Defendants assert that Counts 6 and 9 "allege the possession of the same shotgun, for the same purpose,

---

[5]  Count 6 states that the alleged crime took place in "Rochester, New York," and Count 9 states that the alleged crime took place at "80 Isabelle Street, Rochester, New York." See Second Superceding Indictment (Docket # 268).

during the same time period, but at different addresses" and, as a result, these Counts "allege the continuous possession of a single firearm." See Def. Memo at pp. 66-67. Defendants argue that "because the possession of this firearm is a continuing offense, Counts 6 and 9 charge the same offense in two separate counts and are, therefore, multiplicitous" and should be dismissed. Id. at p. 67.

Section 924(c) makes illegal the use, carrying, or possession of a firearm during the commission of a drug-trafficking crime. 18 U.S.C. § 924(c)(1)(A). If two § 924(c) counts are based on a single "unit of prosecution," then they are improperly multiplicitous. United States v. Wallace, 447 F.3d 184, 187-88 (2d Cir. 2006). The Second Circuit has held that "the appropriate unit of prosecution" under § 924(c) is "the underlying drug-trafficking offense, not the separate firearms." United States v. Lindsay, 985 F.2d 666, 674 (2d Cir. 1993). In Lindsay, the Second Circuit instructed that "[o]nly where the defendant commits multiple drug-trafficking crimes or violent crimes, and the government can link the firearms to those crimes may the government prosecute for multiple violations of § 924(c)(1). Where the government links multiple firearms to a single crime, only one § 924(c)(1) violation occurs." Id. "Further, the fact that predicate narcotics offenses occurred during the course of a single conspiracy does not, without more, foreclose prosecution for multiple Section 924(c) charges

25

related to the predicate offenses, even if they are 'clustered in time and space.'"  United States v. Love, No. 10-CR-6116L, 2012 WL 1684600, at *5 (W.D.N.Y. May 14, 2012)(quoting United States v. Mejia, 545 F.3d 179, 205 (2d Cir. 2008)).  Multiple § 924(c) counts may amount to multiplicitous charges, however, where the multiple offenses arise from the same event or conduct undertaken simultaneously.  See Love, 2012 WL 1684600, at *5 (citing as examples United States v. Wallace, 447 F.3d 184 (2d Cir. 2006) and United States v. Finley, 245 F.3d 199 (2d Cir. 2001)); see also United States v. Goitom, 867 F. Supp. 2d 290, 294-97 (D.Conn. 2012).

As set forth above, Counts 4 and 7 support two separate 21 U.S.C. § 841(a) charges.  Those two § 841(a) charges – the relevant units of prosecution – support the two § 924(c) charges in Counts 6 and 9.  See Love, 2012 WL 1684600, at *5.  Although the defendants are charged with possessing the same Mossberg shotgun in Counts 6 and 9, the shotgun was allegedly possessed at two separate locations (87 Thomas Street and 80 Isabelle Street) in furtherance of the defendants' narcotics processing and distribution efforts at each location.  In other words, the defendants' alleged possession of the shotgun was used in connection with separate crimes conducted at separate locations.  Thus, the charges in Counts 6 and 9 need not be merged into one crime and permit separate § 924(c) charges.  See Mejia, 545 F.3d at 206; Love, 2012 WL 1684600, at *5.

Accordingly, it is my Report and Recommendation that defendants' motion to dismiss Counts 6 and 9 on grounds that they are multiplicitous be denied.

VI. Motion for a Bill of Particulars: The defendants have made a motion for a Bill of Particulars with respect to Counts 1, 2, 4, 5, 6, 7, 8, 9, 10, 14, and 15. I agree with the Government that the particulars demanded here seek disclosure of the Government's evidence and legal theories – information not ordinarily produced pursuant to a demand for a Bill of Particulars. See United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990)(bill of particulars not intended to provide defendant with "evidentiary details" about the government's case), overruled on other grounds as recognized by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010); United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991)(the government need not particularize all of its evidence).

Moreover, the Government has provided the defendants with voluminous discovery, including police reports, jail records, medical records, laboratory reports, audio recordings, search warrant applications, photographs – over 7600 pages of documentary discovery materials. See Government's Response (Docket # 444) at p. 41. In addition, this Court is aware of the unusually detailed proffer made by the Government in support of its motion to detain the defendants during which the role of each defendant and the evidence supporting the charges in the Indictment were detailed.

"[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004)(citation omitted).   Given the extent of the discovery disclosures already provided to the defense, and the fact that the Government has agreed to disclose all Jencks Act materials at least thirty days before jury selection, I find that a bill of particulars providing additional evidentiary details at this time is not justified.

### Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant James Kendrick, Pablo Plaza (DOB 1972), and Janine Plaza Pierce's various motions (Docket # 365) to dismiss be denied and denied without prejudice to renew, to strike any reference to 18 U.S.C. § 2 be denied, and for disclosure of legal instructions given to the Grand Jury with respect to Count 1 be denied.   It is my Report and Recommendation that defendant Kendrick's supplemental motion to dismiss Counts 14 and 15 (Docket # 485) be denied, and the Government's motion to strike the supplemental motion (Docket # 486) be denied as moot.   Finally, it is my Decision and Order that the defendants' motion for a Bill of Particulars be denied.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:      November 7, 2014
            Rochester, New York

28

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[6]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections ... shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:     November 7, 2014
Rochester, New York

---

[6]    Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed.  United States v. Andress, 943 F.2d 622 (6th Cir. 1991); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).