UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

JAMES KENDRICK,

                   Defendant.
_____

Case # 10-CR-6096-FPG

DECISION AND ORDER

## INTRODUCTION

On February 14, 2022, Defendant James Kendrick filed a motion for miscellaneous relief, in which he requests, *inter alia*, that the Court vacate certain protective orders entered in the case. ECF No. 1270. On February 18, 2022, Defendant filed a motion for an order to show cause, seeking the return of his economic impact payments that the government diverted through the Treasury Offset Program. ECF No. 1272. The government opposes both motions. *See* ECF Nos. 1277, 1278, 1284. The Court resolves both motions in this omnibus order. In addition, the Court addresses the amended answer filed by a garnishee. *See* ECF No. 1283.

## DISCUSSION

**I.  Motion for Miscellaneous Relief (ECF No. 1270)**

On March 7, 2016, prior to trial, the Court issued a protective order in this matter, which covered certain "3500 material and pre-trial submissions" and precluded Defendant from retaining copies of the materials. ECF No. 757 at 1-2. After trial, the Court issued a second protective order that gave Defendant limited access to the materials in connection with the prosecution of his direct appeal. ECF No. 1087.

In his letter filed February 14, 2022, Defendant now asks the Court (1) to vacate the protective orders entered in this case as to (a) all trial exhibits, and (b) all "3500" materials, whether or not they were presented at trial; and (2) to direct his former counsel, Bobbi C. Sternheim, to

1

transfer the case file to him. *See* ECF No. 1270 at 1-3. He argues that he needs the case file to prepare a habeas petition under 28 U.S.C. § 2255. *See id.* at 2.

The government opposes the motion, asserting that Defendant should not be given access to the materials. It contends that Defendant remains a "danger to the witnesses who testified against him" and that "his true motive is to harass witnesses, police officers and prosecutors." ECF No. 1284 at 1. This is no speculative concern, in the government's view, since "three of the four murders proven during the trial (of Francisco Santos, Ryan Cooper and Jose Troche) were motivated by [Defendant's] desire to punish those who had cooperated with police against him or his brother or who [Defendant] feared would cooperate against him." *Id.* at 2. The government also notes that Defendant has, since his convictions, "brought multiple lawsuits" against individuals related to his criminal case. *See id.* at 4.

Defendant's request is DENIED WITHOUT PREJUDICE. As the government's opposition memorandum makes clear, the facts underlying Defendant's convictions are heinous and give substance to the government's concerns about the witnesses, police officers, and other individuals involved in this case—hence the Court's original protective order. *See* ECF No. 757. Nevertheless, there are other important interests in play, including Defendant's right to challenge his convictions via the mechanisms available to him. The Court's second protective order sought to balance these competing interests: to ensure that Defendant could adequately prosecute his direct appeal while limiting the potential risks of uninhibited disclosure, the Court permitted Defendant to access, but not retain, the relevant materials. *See* ECF No. 1087 at 1-2.

At this juncture, the Court cannot foreclose the possibility that greater access to materials covered by the protective orders may be warranted so as to give Defendant a meaningful opportunity to prosecute a habeas petition. But it is also not an issue the Court will decide in the abstract, before any habeas petition is filed. Until Defendant files a habeas petition and identifies the issues he is

raising, the Court cannot determine what evidentiary materials and/or trial exhibits are relevant and whether access to those items outweighs the legitimate concerns the government identifies.

The Court's ruling is consistent with the standards governing discovery in habeas actions. A number of courts have held that prisoners do not have a right to pre-petition discovery. *See, e.g.*, *United States v. Cuya*, 964 F.3d 969, 972 (11th Cir. 2020) ("A prisoner is not entitled to file a motion for discovery -- of transcripts, indictments, search warrants, or other records -- before filing a § 2255 motion to vacate."); *United States v. Okai*, 97 F.3d 1453 (6th Cir. 1996) (table op.) (noting that there is no right to discovery "in the air" and that a defendant "must file an antecedent action of some kind ([including] a § 2255 motion to vacate) in order to take advantage of the discovery provisions provided therein"). Correspondingly, however, prisoners are not required to fully substantiate their petition with documentary evidence at the time of filing. *Cf. United States v. Horvath*, 157 F.3d 131, 132 (2d Cir. 1998) ("A § 2255 motion need only set forth the movant's claims of error generally.").

Even if pre-petition discovery were available, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). A defendant must show "good cause" for the discovery. *Brown v. United States*, No. 17-CV-1278, 2020 WL 888102, at *3 (W.D.N.Y Feb. 24, 2020). "In order to show good cause, a petitioner must present specific allegations that give the Court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Khan v. United States*, No. 20-CV-945, 2021 WL 101974, at *4 (S.D.N.Y. Jan. 12, 2021) (internal quotation marks and ellipsis omitted). The desire to "engage in a 'fishing expedition'" to find "grounds that might support his petition" does not constitute good cause. *Id.* (internal quotation marks omitted). Just as courts seek to tailor discovery in habeas cases to the specific allegations the

petitioner raises, so too this Court intends to tailor any modification of the protective order to Defendant's particularized, demonstrable needs.

The Court therefore declines to address whether the protective order should be modified until Defendant files his habeas petition. For the same reasons, because Defendant's request for his former counsel's case file appears to be solely to obtain those materials covered by the protective order, *see* ECF No. 1270 at 2, the Court declines to order said relief. In any future motion, Defendant should specifically identify which materials and/or exhibits he is requesting, along with particularized allegations demonstrating his need for said materials and/or exhibits.[1]

## II. Motion for Order to Show Cause (ECF No. 1272)

On December 19, 2016, the Court sentenced Defendant and ordered him to pay a fine in the amount of $8,000 and a special assessment in the amount of $800. *See* ECF Nos. 930, 937. Payment on those penalties was "to begin immediately." ECF No. 937 at 7. Furthermore, per the written judgment, the special assessment was "due immediately," and Defendant was ordered to begin payment through the Bureau of Prisons Inmate Financial Responsibility Program. *Id.* As for the fine, the Court found that Defendant "ha[d] the ability to pay a $8,000 fine," though it waived interest on the fine. *Id.* The Court ordered that, if Defendant were "non-UNICOR or UNICOR grade 5," he was required to pay installments of $25 per quarter, while if he were "assigned grades 1 through 4 in UNICOR," he was to pay "installments of 50%" of his monthly pay.[2] *Id.* Defendant was ordered to pay 10% of his monthly gross income while on supervision. *Id.*

---

[1] To the extent Defendant is simply requesting copies of publicly docketed materials, he is free to send a Photocopy Request Form to the Clerk's Office, identifying which specific documents he seeks. The Court will direct the Clerk of Court to send Defendant a copy of the form.

[2] UNICOR "is the trade name for Federal Prison Industries, Inc., a government corporation that provides work and training opportunities for federal inmates." *Johnson v. Rowley*, 569 F.3d 40, 43 n.1 (2d Cir. 2009).

4

After judgment was entered, the government took steps to collect on the judgment. Based on the record before the Court, it appears that on January 3, 2017, the Department of Justice sent an "Administrative Offset Notice" to Defendant, notifying him that it intended to refer Defendant's "debt" to the Department of Treasury's Treasury Offset Program if he did not take certain actions within sixty days. *See* ECF No. 1278-3 at 2. On January 27, 2017, the Department of Justice sent a demand letter to Defendant, asserting that the $8,800 in monetary penalties was "due immediately" and demanding that he make full payment. ECF No. 1278-2 at 2. The government alleges that Defendant "failed to respond to the government or make payment as required."[3] ECF No. 1278 at 6. On March 9, 2017, Defendant's penalties were referred to the Treasury Offset Program. ECF No. 1272 at 17.

On April 23, 2021, two economic impact payments (*i.e.* stimulus checks) totaling $1,800 were offset via the program and, minus an administrative fee, applied to Defendant's penalties. *See* ECF No. 1278 at 4 & n.4. On the same day, the Department of Treasury sent a letter to Defendant informing him of the offset. *See* ECF No. 1272 at 12. Defendant states that he received notice of the offset on July 22, 2021. *See id.* at 3. The letter directed Defendant to contact the U.S. Attorney's Office for the Western District of New York if he "believe[d] that your payment was applied in error." *Id.* at 12. On August 12, 2021, Defendant wrote a letter to the U.S. Attorney's Office seeking information. *Id.* at 13-14. On September 13, 2021, a paralegal at the U.S. Attorney's Office sent a letter to Defendant. *Id.* at 16-18. The letter explained the government's actions.

In a motion dated January 31, 2022, Defendant moved for "an Order to Show Cause." ECF No. 1272. He challenges the offset and requests that the Court compel the government to return his economic impact payments. Defendant makes three arguments: First, because he was adhering to

---

[3] The government did not send these notices to Defendant's facility, but to a Rochester, NY mailing address. *See* ECF No. 1278-2 at 2; ECF No. 1278-3 at 2.

5

the payment schedule set forth in his criminal judgment, he was not in default and, therefore, the government could not refer his penalties to the Treasury Offset Program. Second, he did not receive proper notice of the offset. Third, the money should be returned because he needs it to pay for medicine and other necessities.

Having reviewed the record, the Court declines to order Defendant's requested relief. Regardless of whether the government properly used the Treasury Offset Program when and in the manner that it did—an issue which the Court need not address—Defendant has not shown that he was entitled to the money. To the contrary, pursuant to 18 U.S.C. § 3664(n), Defendant was required to apply his economic impact payments to his monetary penalties.

Section 3664(n) reads, "If a person obligated to provide restitution, *or pay a fine*, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, *such person shall be required to apply the value of such resources* to any restitution or *fine still owed*."[4]  18 U.S.C. § 3664(n) (emphases added); *see also United States v. Rio*, 835 F. App'x 684, 686 (3d Cir. 2021) (summary order); *United States v. Baxter*, 694 F. App'x 762, 763 (11th Cir. 2017) (summary order). This provision "triggers an automatic payment requirement" upon "a defendant's receipt of a windfall during imprisonment." *United States v. Bratton-Bey*, 564 F. App'x 28, 29 (4th Cir. 2014) (summary order). This Court has recently held that economic impact payments come within the scope of Section 3664(n). *See United States v. Schwartz*, No. 20-CR-6033, 2022 WL 537621, at *2 (W.D.N.Y. Feb. 23, 2022) (collecting cases and concluding that economic impact payments are substantial resources subject to Section 3664(n)

---

[4] The fact that Section 3664(n) is not cited in Defendant's judgment is irrelevant. Section 3664(n) operates as an independent statutory mandate and is not framed as a condition of a defendant's judgment. *Compare* 18 U.S.C. § 3664(n), *with* 18 U.S.C. § 3572(d)(3) ("A judgment for a fine which permits payments in installments shall include a requirement that the defendant will notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay the fine.").

6

because "they are windfalls and sudden financial injections that have become suddenly available to Defendant" (internal quotation marks and brackets omitted)).

To be sure, some courts have held that a defendant's default is a precondition to the application of Section 3664(n) to an unpaid fine, and Defendant asserts that he was in compliance with his court-ordered payment schedule. *See* ECF No. 1272 at 5; *see, e.g.*, *United States v. Hickman*, 330 F. Supp. 3d 921, 923-24 (W.D.N.Y. 2018) (discussing issue and concluding that, before Section 3664(n) may be invoked, a court "must first conclude that Defendant has defaulted on his payment obligations"). However, the plain language of Section 3664(n) persuades the Court that no statutory precondition of default exists. *See United States v. Lucien*, 347 F.3d 45, 51 (2d Cir. 2003) ("It is axiomatic that statutory interpretation begins with the language of the statute."). Section 3664(n) does not, by its terms, expressly include any such precondition. Nor does it limit the defendant's obligation to "delinquent" fines, "unpaid" fines, fines "in default," or even fines "presently due" under a payment schedule. Rather, a defendant must apply a windfall "to *any* restitution or fine *still owed*." 18 U.S.C. § 3664(n) (emphases added).

In context, the phrase "still owed" must refer to the total restitution or fine balance that has yet to be satisfied, regardless of a defendant's compliance with or default on a court-ordered payment schedule. Other uses of the term "owed" in the statutory scheme only make sense under that interpretation. *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1350 (11th Cir. 1997) (noting the "well-established canon of statutory construction that words have the same meaning throughout a given statute"). A crime victim must notify the Attorney General of any change in address while restitution is "still owed" to the victim. 18 U.S.C. § 3612(b)(1)(G) ("It shall be the responsibility of each victim to notify the Attorney General . . . of any change in the victim's mailing address while restitution is still owed the victim."). This provision can be straightforwardly interpreted to mean that the victim must notify the Attorney General of address

7

changes until the total restitution balance is satisfied, as opposed to interpreting the provision to require victims to notify the Attorney General only if the defendant is in default. Other uses of the term "owe" also favor this construction. *See id.* § 3612(b)(1)(G) (restitution order must include "information sufficient to identify each victim to whom restitution is *owed*" (emphasis added)); *id.* § 3664(k) ("The Attorney General shall certify to the court that the victim or victims *owed* restitution by the defendant have been notified of the change in circumstances." (emphasis added)). Indeed, Section 3664(f) draws a clear distinction between the restitution a defendant "owes" and the payment schedule "according to which" restitution is to be paid. 18 U.S.C. § 3664(f)(2) ("Upon determination of the amount of restitution *owed* to each victim, the court shall . . . specify in the restitution order the manner in which, and *the schedule* according to which, the restitution is to be paid." (emphases added)).

Furthermore, if Congress had intended to limit Section 3664(n)'s application to defaulted or delinquent fines, it could have used the terms "default" or "delinquency," as it did in other sections of the legislation. *See* Antiterrorism & Effective Death Penalty Act of 1996, 110 Stat. 1214, § 207; *cf. Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1495 (2020) ("[T]his Court [does not] usually read into statutes words that aren't there. It's a temptation we are doubly careful to avoid when Congress has (as here) included the term in question elsewhere in the very same statutory provision."). Or Congress could have included Section 3664(n)'s mandate within the section of the statutory scheme dealing with the effect of a defendant's default. *See* 18 U.S.C. § 3613A. It did neither, suggesting that Congress intended for Section 3664(n) to operate as an independent collection mechanism against an incarcerated defendant, without reference to the defendant's compliance with or default on his court-ordered payment schedule. *Accord United States v. Craddock*, No. 15-20003, 2021 WL 3144818, at *2 (D. Kan. July 26, 2021) ("[T]he fact that defendant has not been shown to have violated the Court's judgment is not relevant to the

8

Government's request for payment under [Section 3664(n)]."); *United States v. Thornbrugh*, No. 89-CR-67, 2018 WL 3193804, at *2 (N.D. Okla. June 28, 2018), *aff'd*, 764 F. App'x 655, 657 (10th Cir. 2019) (defendant's compliance with court-ordered payment schedule did not preclude operation of Section 3664(n)).

Accordingly, because Section 3664(n) affirmatively mandates that an incarcerated defendant apply "substantial resources" to any fine that is "still owed"—that is, to any portion of the total fine that has yet to be satisfied—Defendant was obliged to apply his economic impact payments to his outstanding monetary penalties.[5] As a result, Defendant was not entitled to the use of his economic impact payments regardless of the propriety of the offset. Since he is not entitled to relief, his motion is denied.[6]

### III. Amended Answer of Garnishee

In March 2017, the government applied for a writ of garnishment against Defendant's pension plan. ECF No. 965. A writ was issued thereafter, and on April 17, 2017, the pension plan filed its answer. ECF No. 990. On April 24, 2017, Defendant objected to the garnishment and requested a hearing in connection with the garnishment. ECF No. 994. On July 20, 2017, Defendant asked to be informed of the status of his request. ECF No. 1034. No action occurred on Defendant's request. On April 11, 2022, the pension plan filed an amended answer. ECF No. 1283. Defendant has not responded to the amended answer.

---

[5] Defendant also contends that he needs these funds to purchase medicine and other necessities. *See* ECF No. 1272 at 4. Assuming *arguendo* that the Court has the discretion to relieve Defendant of his duty under Section 3664(n) in cases of financial hardship, Defendant has not proffered sufficient evidence of his cash flow and costs to determine whether his claim has merit. *See* ECF No. 1272 at 19-20.

[6] The Court recognizes that it has raised the issue of Section 3664(n) *sua sponte*, such that neither party has had an opportunity to address it. To the extent Defendant disputes the application of Section 3664(n), he is free to submit further briefing, and the Court will review it *de novo*. Moreover, to the extent Defendant takes issue with the Department of Treasury's $18.80 fee, which was taken as part of the offset and which was not credited against his monetary penalties, he may raise that concern in any subsequent briefing.

Given the lack of action taken on Defendant's original, timely request for a hearing, *see generally* 28 U.S.C. § 3205, as well as the lengthy delay between the original and amended answers, the Court declines to address Defendant's original request for a hearing. Instead, the Court intends to give Defendant an opportunity to respond to the amended answer. By June 20, 2022, Defendant may, if he wishes, renew his objections and request a hearing. If he fails to do so, the Court will treat his nonresponse as a failure to object and/or request a hearing as to the garnishment.

## CONCLUSION

For the reasons stated herein, Defendant's motion for miscellaneous relief (ECF No. 1270) is DENIED WITHOUT PREJUDICE, and his motion for an Order to Show Cause (ECF No. 1272) is DENIED. By June 20, 2022, Defendant may, if he wishes, renew his objections and request a hearing related to his pension plan's amended answer (ECF No. 1283). The Court directs the Clerk of Court to send Defendant a copy of the Photocopy Request Form.

IT IS SO ORDERED.

Dated: June 3, 2022
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York