UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES KENDRICK,

                                        Petitioner,

                                                            Case No. 22-CV-6510-FPG

v.


UNITED STATES OF AMERICA,                                   DECISION AND ORDER

                                        Respondent.


UNITED STATES OF AMERICA,

                                                            Case No. 10-CR-6096-FPG
v.


JAMES KENDRICK,                                             DECISION AND ORDER

                                        Defendant.


## INTRODUCTION

On December 19, 2016, this Court sentenced Defendant James Kendrick to a total term of imprisonment of life plus thirty years for his involvement in a drug-related continuing criminal enterprise.  ECF No. 937.  Currently before the Court are numerous motions and requests filed by Defendant since his sentencing.  The Court presumes the reader's familiarity with the underlying facts and procedural history.

## DISCUSSION

### I.    Motion for Recusal

Pursuant to Sections 144 and 455 of Title 28 of the United States Code, Defendant moves for recusal on the basis that, at sentencing, the Court made certain comments that, in Defendant's

view, reveal a "strong personal bias" against him.[1]  ECF No. 1338 at 3.  Defendant cites three comments that the Court made in deciding to sentence him to a term of life imprisonment:  First, after recounting the crimes of which Defendant had been convicted, the Court stated that Defendant "should never walk as a free man in any community ever."  ECF No. 1023 at 48.  Second, while recognizing that Defendant was "still a relatively young man," the Court stated, "I don't see any way that this Court could in any way risk your being available to any community." *Id.*  Third, in announcing the sentence of life imprisonment on Count 2, the Court stated that it "hope[d] that you will never ever be released from jail." *Id.*

The Court concludes that these comments do not establish a bias warranting recusal.  Section 144 reads: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."  28 U.S.C. § 144(a). Section 455 provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," including where "he has a personal bias or prejudice concerning a party."  28 U.S.C. § 455(a), (b)(1).  "As a general rule, the alleged bias must stem from an 'extrajudicial source'—that is, the alleged prejudice cannot derive solely from the court's rulings or statements from the bench." *United States v. Jones*, No. 99-CR-264, 2002 WL 32086511, at *3 (D. Conn. Aug. 16, 2002).  Thus, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-

---

[1] In passing, Defendant also suggests that recusal is warranted because the undersigned, while a state-court judge, had previously presided over the bench trial of a person who would later be a "key witness" for the government in this case.  ECF No. 1338 at 4.  The state-court case involved a rape charge that was unrelated to Defendant, though Defendant alleges that the person was "cooperating with the [g]overnment in [his] case" at the time. *Id.*  These circumstances do not provide a ground for recusal.

seated favoritism or antagonism that would make fair judgment impossible." *United States v. Jones*, 294 F. App'x 624, 627 (2d Cir. 2008) (summary order).  "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Jones*, 2002 WL 32086511, at *3.

The statements that Defendant cites were appropriate comments made in the context of the Court's sentencing determination.  At Defendant's sentencing, the Court was tasked with evaluating, *inter alia*, the "seriousness of the offense[s]" and the need to provide "just punishment for the offense[s]" and  protect "the public from further crimes of [Defendant]."  18 U.S.C. § 3553(a)(2)(A), (C).  The Court permissibly considered the facts established at trial and sentencing, and Defendant does not allege that the Court's alleged bias stemmed from an "extrajudicial source."    The facts underlying Defendant's convictions were outrageous.  Defendant was the leader of a "murderous drug distribution conspiracy," ECF No. 1023 at 22, who did not hesitate to use violence "to continue this operation." *Id.* at 45.  The Court discussed four murder victims at sentencing.  Three were former associates of Defendant whose deaths were utterly disturbing: one was buried alive; a second was beaten to death before being dismembered, his remains scattered throughout the city; and a third was "slaughtered in his driveway as he was getting ready to go to work." *Id.* at 46.  The fourth victim was shot in a "callous act[]" of mistaken identity. *Id.* at 46-47.

Based on all of the facts presented, including these horrifying acts of violence, the Court concluded that Defendant was "an extremely dangerous person" who should not "walk as a free man in any community ever."  ECF No. 1023 at 48; *see also* 18 U.S.C. § 3553(a)(2)(C).  The Court considered mitigating facts, including Defendant's age, but could not "see any way" that

Defendant would not pose a risk to the community.  ECF No. 1023 at 48.  And, after considering the relevant factors, the Court determined that Defendant should "never ever be released from jail," ECF No. 1023 at 48, *i.e.*, that a term of life imprisonment was "sufficient[] but not greater than necessary," 18 U.S.C. § 3553(a).  None of these comments evince a "deep-seated favoritism or antagonism that would make fair judgment impossible."  *Jones*, 294 F. App'x at 627. Therefore, recusal is unwarranted.  *Accord id.* (judge's statements about defendant, including that defendant was a "violent person who doesn't deserve to be a free person," did not require recusal); *see also Liteky v. United States*, 510 U.S. 540, 550-51 (1994) ("The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person.  But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.").

Defendant's motion for recusal is DENIED.

## II.   Rule 33 Motion(s)

In January 2020, Defendant filed a motion to vacate pursuant to Federal Rule of Criminal Procedure 33, which he thereafter supplemented.  *See, e.g.*, ECF Nos. 1117, 1118, 1170.  The Court analyzes Defendant's arguments below.

### a.   Legal Standard

Rule 33(a) provides that, on a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "The Rule confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice."  *United States v. Teman*, 465 F. Supp. 3d 277, 292 (S.D.N.Y.

2020) (internal quotation marks omitted).  "On such a motion, the defendant bears the burden of proving that he is entitled to a new trial, and in order to grant a new trial, a district court must find that there is a real concern that an innocent person may have been convicted." *United States v. Hunter*, 32 F.4th 22, 30 (2d Cir. 2022) (internal quotation marks and brackets omitted).

With respect to the time limits for Rule 33 motions, the rule states that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(1).  "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).  "Evidence is only 'newly discovered' under Rule 33 if it was discovered after trial and could not with due diligence have been discovered before or during trial."  *United States v. Ulbricht*, 748 F. App'x 430, 431 (2d Cir. 2019) (summary order) (internal quotation marks omitted).

Because Defendant did not file his original Rule 33 motion until nearly three years after the verdict, his motion would only be proper if it were "grounded on newly discovered evidence."  Fed. R. Cim. P. 33(b)(1).  "To merit relief based on a claim of newly discovered evidence, the burden is on the defendant to satisfy five elements: (1) that the evidence is newly discovered after trial; (2) that facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) that the evidence is material; (4) that the evidence is not merely cumulative or impeaching; and (5) that the evidence would likely result in an acquittal."  *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (internal quotation marks omitted).

### b. Discussion

Defendant argues that the government failed to produce evidence in violation of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  There are several categories of evidence that Defendant identifies.

The standard under *Brady* "and related authorities" is "well-established":

> [I]n a criminal prosecution, the government has an affirmative duty under the Due Process Clause to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense.  If this obligation is violated, the district court may grant a new trial. That said, not all instances of governmental nondisclosure violate *Brady*, or warrant such relief. There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. In other words, true *Brady* material must be (1) favorable, (2) suppressed, and (3) prejudicial.

*Hunter*, 32 F.4th at 30-31 (internal quotation marks and footnotes omitted).  "The government's failure to produce evidence is prejudicial and thereby violates a defendant's rights under *Brady* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Halloran*, 821 F.3d 321, 341 (2d Cir. 2016).

### i. Evidence Regarding Past Federal Investigations/Involvement

### 1. Background

### a. May 2000 Investigation

Defendant contends that the government failed to produce evidence indicating that federal agents—specifically, the Drug Enforcement Administration ("DEA")—had played some role in a state criminal investigation into Defendant's drug-trafficking activities in May 2000. Specifically, on May 4, 2000, officers with the Rochester Police Department executed a search warrant at 1567 Dewey Avenue in Rochester.  ECF No. 1131-1 at 9.  In connection with the

search, police stopped a vehicle in which Defendant was a passenger.  During a pat-down search, the officers uncovered $1,626 in Defendant's pockets.  *Id.*  The officers also searched, pursuant to a warrant, an apartment located at 1020 Ridgeway Avenue, where they found cocaine.  *Id.* at 10.

Defendant was charged with first-degree criminal possession of a controlled substance. *Id.*  In February 2001, he pleaded guilty and was sentenced to six years to life.  ECF No. 1085 at 30-31.  Defendant appealed the conviction.  In June 2008, he was discharged by the Parole Board.  *Id.* at 31.  Defendant's plea was later vacated on appeal and remitted to the Supreme Court for further proceedings.  *See People v. Kendrick*, 47 N.Y.S.3d 550 (4th Dep't 2017).  The State subsequently dismissed Defendant's case in the interest of justice.  ECF No. 1390-2 at 98-99.

In 2010, Defendant was indicted in the present matter.  ECF No. 1.  In 2014, Defendant learned that he had been included in the DEA's national electronic database: the Narcotics and Dangerous Drug Information System ("NADDIS").  *See* ECF No. 1117 at 2; ECF No. 1131 at 8. Using the Freedom of Information Act ("FOIA"), Geoffrey Resnick (Defendant's private investigator) was able to obtain three redacted pages from Defendant's NADDIS file.  ECF No. 1131 at 8-10.  Those pages disclosed that the DEA had an investigative file on Defendant.

On July 23, 2016—while the jury was deliberating—Defendant sent FOIA requests to the DEA seeking "any and all records" pertaining to his NADDIS and investigative files.  ECF No. 1131 at 79.  In November 2016, the DEA responded.  *Id.* at 80.  The documents related to Defendant's May 2000 arrest.  They disclosed that the Rochester Police Department had transferred the $1,626 seized from Defendant to the DEA for forfeiture proceedings.  *Id.* at 84-88; ECF No. 1131-1 at 2-10.  In December 2017—after further requests—Defendant received

additional documents from the DEA: his NADDIS "Full Report," and a NADDIS access log showing searches of his NADDIS file.  ECF No. 1131-1 at 15-19.

### b.  March 2000 FBI Search

In a similar vein, Defendant asserts that the government failed to produce evidence related to a search that the FBI conducted at 80 Isabelle Street in Rochester—allegedly the home of Defendant's grandmother—in March 2000.

Defendant states that he was previously aware that the government had searched the home "in or about 1999-2000."  ECF No. 1118 at 8.  In October 2017, Defendant submitted a FOIA request to the FBI seeking information about the search.  ECF No. 1131-1 at 23-24.  In October 2019, the FBI provided a response.  *Id.* at 25.  The response reveals that, on March 23, 2000, federal agents executed a search warrant at the Isabelle Street residence.  *Id.* at 31.  The search warrant was addressed to agents of the FBI, DEA, and "any member of the New York State Organized Crime Task Force or New York State Police."  *Id.* at 34.  The purpose of the search was to find evidence of drugs and drug conspiracy.  *Id.*  No drugs were found during the search.  *Id.* at 31.  In early 2001, the FBI obtained Defendant's driver's license photograph from the New York State Department of Motor Vehicles.  *Id.* at 40.  In a memorandum dated February 2007, an unknown FBI agent appears to indicate that, even as late as 2006, an Assistant United States Attorney ("AUSA") had been "assigned" to the matter.  *See id.* at 29.  The memorandum states that "[t]here are a number of outstanding fugitives related to the captioned matter and pending evidence regarding captioned matter."  *Id.*; *see also id.* at 36.  It further states that "[m]any of the fugitives are believed to be in the Dominican Republic" or in "Puerto Rico." ECF No. 1340-5 at 56.

### c.  Other FBI Documents

In his supplemental filings, Defendant proffered more documents that he obtained from the FBI via FOIA.  *See, e.g.*, ECF No. 1170 at 22-24; ECF No. 1256.  Among other things, these documents show that the FBI had submitted requests to criminal databases regarding Defendant as early as February 2000, *see* ECF No. 1172 at 19-30, had surveilled Defendant in early March 2000, ECF No. 1340-5 at 31-32, and had been notified of the state-court charges arising out of the May 2000 search.  *See* ECF No. 1172, at 32-49.  Furthermore, Defendant has obtained internal FBI memoranda.  One, dated March 2010, is a compilation of "biographic research" on Defendant, and it identifies Defendant as a "possible [Violent Crime] Task Force target[]."  ECF No. 1340-5 at 43.  Another—dated August 2010, three months after Defendant had been indicted, ECF No. 1—requests that a case be opened against Defendant for the murders of Francisco Santos, Ryan Cooper, and Jose Troche.  ECF No. 1172 at 50-51.  In Defendant's view, these documents show that the FBI "was investigating [him] for drugs and the murders . . . as early as February 29, 2000."  ECF No. 1170 at 22.

### 2.  Discussion

Defendant contends that the government withheld the above documentation, which "would have been helpful to the [d]efense."  ECF No. 1118 at 7.  Defendant articulates two reasons why the withholding of these documents was prejudicial.  First, Defendant theorizes that, because federal agencies were involved in investigations into his criminal activities in or around 2000, and yet failed to pursue drug-conspiracy and/or murder charges initially, they must have declined to pursue the charges because there was insufficient credible evidence to do so.[2]  *See id.*

---

[2] In passing, Defendant asserts that, because these documents were withheld, he was prevented from "filing a pre-trial motion[] based on a Due Process (5th Amendment) violation for the government's delay in bringing this case."  ECF No. 1118 at 7.  Defendant does not meaningfully develop his argument that, with this evidence in hand, he would have had a meritorious claim of excessive preindictment delay.  He has not shown either "substantial

9

at 13 (asserting that federal agents and prosecutors investigated the "Santos homicide back in 1999-2000" and refused to prosecute because they "discovered that all of the witnesses that made statements about the assault, kidnapping and murder of Santos, gave perjured and/or false statements").  Second, Defendant posits that federal involvement in the early 2000s, culminating in no charges, undercuts the government's allegation of a continuing conspiracy extending from 1993 to 2011, *see* ECF No. 268 at 1-2 (Count 1 of second superseding indictment), and bolsters the defense theory that there were multiple, distinct conspiracies.  *See, e.g.*, ECF No. 995 at 10; *see also* ECF No. 1118 at 7-8 (suggesting that DEA's failure to bring a case against Defendant in 2000 undermines "the government's theory of a continuing drug conspiracy"); ECF No. 1170 at 8-9; ECF No. 1226 at 11 (asserting that March 2000 search warrants "imply a conspiracy that is distinct and separate conspiracy from the conspiracy charged in this case").

Defendant is not entitled to relief under Rule 33 with respect to this evidence.  For purposes of Rule 33(b)(1), Defendant has not met his burden to show that the above evidence "is in fact 'new,'" in the sense that it "could not have been discovered, exercising due diligence, before or during trial."  *United States v. Zagari*, 111 F.3d 307, 322 (2d Cir. 1997).  In this case, the record before the Court indicates that Defendant was aware of the DEA's involvement in the May 2000 investigation, and the FBI's March 2000 search of the Isabelle Street residence, prior to trial.  For one thing, in 2000, Defendant had received letters from the DEA indicating that it had instituted forfeiture proceedings with respect to the $1,626 in cash seized from Defendant in May 2000.  *See* ECF No. 1131-1 at 2-6.  By 2014, Defendant had used FOIA to obtain some information from his NADDIS file, which confirmed the DEA's involvement in the seizure of the money.  *See* ECF No. 1118 at 1; ECF No. 1131 at 10.  As to the FBI's search, Defendant has

---

prejudice" to his ability to present his defense or proof that "the delay was an intentional device to gain a tactical advantage."  *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999) (internal brackets and quotation marks omitted).

long been associated with the Isabelle Street residence, and he nowhere claims that he lacked awareness of the search at the time it occurred; indeed, his awareness of the search is what prompted his FOIA request to the FBI.  *See* ECF No. 1118 at 8-9; ECF No. 1131 at 4; ECF No. 1131-1 at 23-24.

Given Defendant's awareness of the DEA's and FBI's actions, as well as his previous use of FOIA as a mechanism to uncover documentation prior to trial, the Court cannot conclude that Defendant acted with due diligence "to obtain the evidence" on which he now relies. *James*, 712 F.3d at 107.  Although Defendant had been aware of the DEA's involvement in the May 2000 search since at least July 2000, *see* ECF No. 1131-1 at 2-6, and had obtained some relevant files in 2014 through FOIA, *see* ECF No. 1118 at 1, it was not until July 23, 2016—while the jury was deliberating—that Defendant submitted the FOIA request that yielded the documents he provides to the Court.  *See* ECF Nos. 863-64; ECF No. 1131 at 78.  Defendant offers no explanation for the delay and no reason why he could not have submitted the same FOIA request months or years earlier. *See United States v. Walker*, No. 16-CR-327, 2021 WL 2349985, at *4 (S.D.N.Y. June 9, 2021).  The same goes for the FOIA request to the FBI: Defendant waited until October 2017 to submit that request, despite his knowledge of the FBI searches.  *See* ECF No. 1131-1 at 23.

Regardless, Defendant's claim also fails on the merits.  Defendant has not shown that the alleged withholding of this evidence was prejudicial under *Brady*.  Defendant's theories of prejudice are wholly speculative.  *See United States v. Birney*, 686 F.2d 102, 105-06 (2d Cir. 1982) ("[P]roof of prejudice must be definite and not speculative.").  None of the documents disclose why federal prosecutors or investigators declined to pursue federal charges against Defendant in the early 2000s, let alone establish that they declined to do so because of the

weakness of the evidence. Nor do they tend to disprove a continuing conspiracy between Defendant and his indicted co-conspirators. At most, these documents show that Defendant had been on the "radar" of, and had been investigated by, certain federal agencies since the early 2000s. But it would require a highly attenuated and unsupported chain of inferences to draw from that relatively banal observation either the conclusion that federal investigators and prosecutors knew there was insufficient credible evidence against Defendant to support the charges of which he was convicted, or the conclusion that there was no continuing conspiracy between the co-conspirators alleged in Defendant's case.[3]  *Brady* demands more. *See, e.g.*, *United States v. Charles*, No. 10-CR-37, 2011 WL 2689353, at *5 (D.V.I. July 11, 2011) ("Given the highly speculative nature of [the defendant's] latest theory of the case . . . and the failure to identify any particular evidence in the possession of the government that supports his theory, the Court declines to find a *Brady* violation.").

To support the inference he wishes to draw, Defendant relies on statements made by the government at his detention hearing in March 2011. *See* ECF No. 1118 at 12-13. At the hearing, the following exchange occurred between the government and Magistrate Judge Feldman:

> MAGISTRATE JUDGE FELDMAN: . . . Your proffer has detailed substantial evidence. I realize it's only one side of the proffer here, but I think it could be

---

[3] For example, Defendant posits that the FOIA materials from the FBI prove that the FBI investigated him in the early 2000s for a "distinct and separate drug conspiracy from the drug conspiracy alleged as Count-1." ECF No. 1340 at 17; *see also* ECF No. 1259 at 2 (suggesting that he was being investigated as a "co-conspirator" in a different conspiracy with a different leader); ECF No. 1340-2 at 14. In Defendant's view, this information supports the "multiple conspiracy defense" he pursued at trial and undermines aspects of the government's theory at trial. ECF No. 1340 at 17 (alleging that existence of other conspiracy undermines government's theory regarding Defendant's supplier). It does not. A multiple conspiracies charge is "not called for simply because a defendant" is alleged to be involved in more than one conspiracy. *United States v. Aguilar*, 352 F. App'x 522, 525 (2d Cir. 2009) (summary order). Its purpose is to "assist the jury in determining whether or not a *particular charged conspiracy* was truly a 'single conspiracy.'" *Id.* (emphasis added). Thus, the fact that Defendant may have been involved in *another* uncharged drug conspiracy with different individuals does not, standing alone, conflict with the government's theory that he was also involved in the single drug conspiracy alleged in Count 1. *See United States v. Florida*, 731 F. App'x 694 (9th Cir. 2018) (mem. op.) ("The indictment charged a single overarching agreement, and the government's evidence at trial proved the existence of *that* agreement. No evidence suggests that Defendant was involved *only* in other conspiracies and *not* in the single overarching conspiracy—as is required to necessitate an instruction on multiple conspiracies.").

described as compelling evidence through the use of confidential witnesses who are anonymous to the Court and defense counsel, but obviously known to you and local law enforcement who investigated the murder of Mr. Santos.  The strength of your proffer begs the question that I'm getting at . . . .  If the strength of your case is as strong as you've outlined to me right now, why has it taken 12 years to bring these defendants to charges?  Is there some -- I mean, the question that's being begged is if the evidence is so strong, is there some legal or evidentiary problem that prevented these individuals from being prosecuted earlier?

MR. RODRIGUEZ: Judge, I've asked myself that question many times.  The Federal Government became involved in the case and the investigation after James Kendrick and Jeff Davis were stopped in Schenectady, I think, in October of 2009 with 100 grams of heroin. . . .  [I]n January 2010 Jose Troche was murdered in front of his house; the driver of the car that Kendrick and Davis were in when they got stopped in Schenectady was murdered in front of his house.  Rochester Police investigated, and they requested assistance from our office.  We became involved.  Initially we viewed it as a simple drug investigation.  Through the work of Special Agent Chris Robinson from the ATF and Investigator David Guidice, we began basically to go back through old files and we came across this.

We've been in contact obviously with the Erie County Sheriff's Office. I've read the reports. I've read the statements. The investigators wanted it prosecuted. For some reason that only the Erie County District Attorney's Office will know, they chose not to bring the case.

MAGISTRATE JUDGE FELDMAN: And you have no -- in terms of asking me to rely on the strength of this, you have no information as to why -- based on all the evidence, including the direct evidence that you've outlined here -- these murders went uncharged until you took over the investigation?

MR. RODRIGUEZ: Judge, other than perhaps -- and I am no expert in state co-conspirator law -- but other than perhaps the difficulty of basing a prosecution on the statements of accomplices or co-conspirators, which is a concern stateside. It's not a concern federally. I don't know, I do not know why these cases were not -- why these cases were –

MAGISTRATE JUDGE FELDMAN: Right. But even putting aside that, you have statements from Mr. Negron and Mr. Cruz, according to you, taken by law enforcement basically admitting to the attempted kidnap and brutal beating of Mr. Santos. Even if you didn't prosecute the murder, were there some issues that are not being revealed that go to the credibility of the investigation?

MR. RODRIGUEZ: I am not aware of any issues, Judge, with respect to credibility of witnesses or with respect to the credibility of the investigation that would have caused the investigation, the prosecution to not go forward.

MAGISTRATE JUDGE FELDMAN: Okay.

ECF No. 94 at 46-50.  Defendant contends that the government's representation that it only began investigating Defendant in October 2009 was knowingly false—since, as the above evidence shows, federal agencies had investigated or at least know of Defendant's criminal activities "back in 1999-2000."  ECF No. 1118 at 10.  In Defendant's view, the government made such false representations in order to hide the "credibility problems with [its] witnesses," *Id.* at 13, and the fact that there was no continuing drug conspiracy.

Again, however, the inference that Defendant seeks to draw is unreasonable.  The government's statements at the hearing cannot be reasonably understood to mean that no federal agency or entity had *ever* investigated or otherwise knew about Defendant's criminal activities prior to October 2009.  Rather, the government was merely explaining when and how the *present* investigation into Defendant's *current* federal criminal charges had occurred.  *See* ECF No. 1246 at 7 ("The federal government did become involved in the present case after Kendrick, Jeffrey Davis and Jose Troche were arrested on the New York State Thruway in October 2009 and approximately 100 grams of heroin was seized from their car.").  Indeed, the government specifically acknowledged at the detention hearing that there were "old files" that they considered as part of their present investigation into Defendant's criminal conduct.  *See* ECF No. 94 at 49; ECF No. 1246 at 7.  The notion that the government was attempting to hide prior federal activity due to concerns over the viability of its case against Defendant is all the more unreasonable given that, during discovery, the government affirmatively disclosed evidence showing federal "involvement" earlier than October 2009.  *See* ECF No. 363-2 at 19-21 (test results from FBI laboratory relating to Santos homicide); ECF No. 363-3 at 30 (note referencing A.U.S.A.); ECF No. 753 at 11 (note referencing, with regard to Defendant, drug conspiracy and

14

"DEA" indictment "on conspiracy"); *see also* ECF No. 752 at 3 (relying on such evidence to allege "federal involvement close in time to the 1998 and 1999 homicides").

Therefore, the mere fact that Defendant had been on the federal "radar" since the early 2000s does not reasonably support the speculative inferences on which Defendant premises his *Brady* claim.  Because Defendant has not demonstrated prejudice from the government's alleged nondisclosure of the above documentation, no relief is warranted on these grounds.[4]

In supplemental filings, Defendant argues that nondisclosure of the FBI and DEA evidence was prejudicial in other ways.

First, he argues that nondisclosure of the FBI search was prejudicial insofar as the results of that search tended to discredit witness Laurie Cooper's claim that the Isabelle Street residence was Defendant's "stash-house."  ECF No. 1226 at 12.  Defendant has not established prejudice. Cooper testified at trial that Janine Plaza Pierce and Defendant sold her cocaine beginning in the mid-1990s.  ECF No. 962 at 41.  Cooper would contact Defendant through his pager, or she would contact Plaza Pierce by calling a phone located at the Isabelle Street residence.  *See id.* at 73.  Cooper testified vaguely that she had "heard" that the Isabelle Street residence was used as a stash house.  *See id.* at 93-94.  However, Cooper did not claim to have personal knowledge of that fact, *id.* at 94, and she stopped contacting Janine Plaza Pierce in Spring 1999— approximately one year before the FBI's search of the Isabelle Street residence.  *See id.* at 60, 97-98; *see also* ECF No. 1131-1 at 31.  Given Cooper's lack of personal knowledge, evidence

---

[4] Defendant also suggests that the government's failure to bring charges against him undercuts the usual presumption that a conspiracy is "presumed to exist until there has been an affirmative showing that it has been terminated, and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." *United States v. Spero*, 331 F.3d 57, 60 (2d Cir. 2003) (internal brackets omitted).  Defendant offers no legal authority for this claim, however.  Indeed, if the government's "defeat of the conspiracy's objective will not necessarily and automatically terminate the conspiracy," it is difficult to see why the government's *failure* to defeat the conspiracy's objective would do so.  *United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003); *see also United States v. Viertel*, 98 F. App'x 68, 70 (2d Cir. 2004) (summary order) ("[D]etection of a conspiracy does not necessarily end it.").

that the FBI's search did not uncover any drugs at the residence, one year after Cooper stopped contacting Plaza Pierce there, would have "contradicted" Cooper's testimony "to a minimal extent," *United States v. Castillo*, No. 05-2220, 2006 WL 1070904, at *1 (2d Cir. Apr. 20, 2006), and does not "undermine confidence in the verdict."[5]  *United States v. Jackson*, 345 F.3d 59, 73 (2d Cir. 2003).

Second, Defendant claims that the documents regarding the May 2000 searches constituted impeachment material, insofar as the description of the May 2000 searches "do[es] not comport" with the testimony of the officers at Defendant's trial.  ECF No. 1118 at 6; *see also* ECF No. 1226 at 14; ECF No. 1241 at 2-3; ECF No. 1325 at 2.  Specifically, the report indicates that 268 grams of cocaine was found in a white plastic bag, and 504 grams in two "Wegman's shopping bags," ECF No. 1131-1 at 10, whereas police officers testified at trial that 773 grams of cocaine were found in the white plastic bag.  *See* ECF No. 1241 at 3; ECF No. 1241 at 3.

In the first place, there is no indication from the documents themselves who authored, or was the source of, the description of the May 2000 searches.  *See* ECF No. 1131-1 at 8-10; ECF No. 1340-5 at 24-27.  But regardless, even assuming that the testifying officers were the sources, it is not enough for Defendant to allege that this discrepancy could have been used as "impeachment material."  ECF No. 1340 at 8.  He must establish "that there was a reasonable probability of a different result[] had the suppressed evidence been made available."  *United States v. Ramirez*, 628 F. Appx 15, 17 (2d Cir. 2015) (summary order) (internal citations and quotation marks omitted).  That is, the impeachment material must "hav[e] the potential to alter the jury's assessment of the credibility of a significant prosecution witness."  *United States v.*

[5] For the same reasons, the results of the March 2000 do not "discredit" the testimony of Javier Troche, ECF No. 1325 at 7-8, who testified that, in 1999, he visited the Isabelle Street residence and observed duffle bags filled with guns and ammunition.  *See* ECF No. 973 at 64-66.  Troche further testified that, at that time, he accompanied Defendant as Defendant took the bags to a storage unit.  *Id.* at 67.  There is no inconsistency between Troche's testimony and the results of the FBI's search.

*Avellino*, 136 F.3d 249, 255 (2d Cir. 1998).  Defendant fails to explain how a discrepancy over where some of the drugs were found during the search—whether in Defendant's bag or in "Wegman's" shopping bags elsewhere in the residence—could have meaningfully called into question the prosecution's theory or the relevant witnesses' credibility.    Defendant does not claim the drugs might have been planted or that, with this impeachment material, he could have established a lack of connection between the drugs and himself.   To the contrary, there was evidence linking Defendant to the white shopping bag and to the drug activities at the Ridgeway Avenue residence and, indeed, there was evidence that Defendant used "Wegman's" shopping bags when moving drugs.  *See* ECF No. 968 at 73-74, 81; ECF No. 969 at 91, 162; ECF No. 973 at 93-94; ECF No. 982 at 110-11, 123-24.  Defendant has not established materiality to support a *Brady* claim.  *See Avellino*, 136 F.3d at 257 ("Undisclosed impeachment evidence is not material in the *Brady* sense when, although possibly useful to the defense, it is not likely to have changed the verdict." (internal quotation marks omitted)).

### ii.  Records Relating to October 2009 Stop

In July 2016, Defendant submitted a Freedom of Information Law ("FOIL") request to the New York State Police, requesting records relating to a traffic stop in which he was involved in October 2009.  ECF No. 1131-1 at 59.  After some litigation over the request, Defendant received an audit log associated with the stop.  *Id.* at 66.

By way of background, Defendant was the passenger in the vehicle that was pulled over for speeding.  *See* ECF No. 643 at 2-3.  Defendant had moved to suppress inculpatory evidence and statements obtained as a result of the stop.  *See* ECF No. 25 at 8-16.  Magistrate Judge Feldman had recommended that the motion be denied, ECF No. 643, which this Court adopted. ECF No. 677.  Judge Feldman rejected Defendant's argument that "the 21 minute delay between

17

the traffic stop and the search of the [vehicle] during which the narcotics were found was unreasonable under the Fourth Amendment."  ECF No. 643 at 8.

In Defendant's view, the audit log confirms that the driver's speeding ticket was issued at 10:12 A.M.—twelve minutes before consent to search the vehicle was obtained—and thus the continued seizure of the driver and passengers thereafter constituted an "unlawful detention," such that the "evidence seized during the search that followed should have been suppressed." ECF No. 1118 at 16.

Assuming *arguendo* that the government withheld the evidence, Defendant has not established that the alleged nondisclosure of this evidence was prejudicial.  The audit log merely corroborates the trooper's testimony that he verified the driver's information at 10:12 A.M. and could have issued the speeding ticket at that point.  *See* ECF No. 1131-1 at 49, 68.  These were the very facts on which Magistrate Judge Feldman relied when he concluded that the stop was reasonable under the circumstances.  *See* ECF No. 643 at 10-12; ECF No. 677 at 15-17. Therefore, the alleged withholding of this cumulative evidence cannot support a *Brady* violation. *See United States v. Barcelo*, 628 F. App'x 36, 39 (2d Cir. 2015) (summary order) ("To establish prejudice, a plaintiff must show the suppressed evidence was material.  The touchstone of materiality is a reasonable probability of a different result." (internal citations, quotation marks, brackets, and ellipsis omitted)); *see also James*, 712 F.3d at 107 (relief under Rule 33 not warranted if evidence is cumulative).

### iii.  County Case File

Defendant was charged in state court as a result of the October 2009 traffic stop.  On February 1, 2010, Defendant's attorney in the state proceeding requested discovery from the prosecution, including "[a]ny written, recorded or oral statement of the defendant."  ECF No.

1131-1 at 73.   On March 5, 2010, the prosecutor responded that "[n]one exist."  *Id.* at 77.
Defendant argues that the prosecutor's response proves that he did not, in fact, make the
inculpatory statement after the traffic stop that was attributed to him—specifically, that he
"admit[ed] to picking up 100 grams of heroin, from New York City, every week from 2005 to
2009."  ECF No. 1118 at 17.   Defendant argues that the government's failure to turn over the
prosecutor's response in his federal case violated *Brady*, as it tended to show that he did "not
make the oral statement that the government alleged that [he] made."  *Id.*

For purposes of Rule 33(b)(1), Defendant has not demonstrated that this evidence was
"newly discovered after trial" or that he exercised due diligence to obtain the evidence.  *James*,
712 F.3d at 107.   To the contrary, Defendant's counsel had these documents in his possession as
of October 2010 and relied on them during motion practice.  *See* ECF No. 25 at 15; ECF No. 25-
1 (copies of documents).   For the same reason, Defendant has not met his burden to establish a
*Brady* claim: because Defendant's counsel had these documents, Defendant has not shown that
this evidence was suppressed.  *See United States v. Torres*, 129 F.3d 710, 717 (2d Cir. 1997).

### iv.  DOCCS Records

Defendant has submitted documents from New York's Department of Corrections and
Community Supervision ("DOCCS") that, in his view, tend to undermine the testimony of
Franklyn Gonzalez.   Defendant recounts that Gonzalez testified before the grand jury that he
"rode with Jose Troche every week when Jose Troche visited [Defendant] in prison" for the
purpose of giving Defendant money from the proceeds of drug sales.  ECF No. 1118 at 18.   At
trial, Gonzalez "changed his testimony" and stated "that he only rode with Jose Troche" twice—
a claim that is corroborated by the DOCCS records.  *Id.*; *see also* ECF No. 1131-1 at 82.
Furthermore, relying on package logs, Defendant asserts that Gonzalez falsely testified that

Troche sent Defendant a "pair of sneakers" while Defendant "was in prison."  ECF No. 1118 at 19; ECF No. 1131-1 at 84-85.  From this information, Defendant asserts that Gonzalez "gave perjured testimony" at trial.  ECF No. 1118 at 19.

Defendant has not established that his claim relating to the DOCCS records is timely, as he has not shown that this evidence is "newly discovered" under Rule 33(b)(1).  *See James*, 712 F.3d at 107.  Defendant nowhere claims that, acting with due diligence, he could not have discovered the DOCCS records until after trial.  *See* ECF No. 1118 at 18-19.  The fact that the DOCCS records are bates stamped suggests that the government produced them to Defendant as part of pretrial discovery.  *See, e.g.*, ECF No. 1131-1 at 79-85.  And consequently, Defendant has not shown that the DOCCS records were suppressed within the meaning of *Brady*.[6]  *See United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) ("*Brady* material must be disclosed in time for its effective use at trial."); *see also* ECF No. 981 at 17-18 (cross-examining Gonzalez regarding his grand jury testimony).

### v. Custody Records

In his supplemental Rule 33 motion, Defendant alleges that, at some point after March 2020, he was able to obtain verification from the Monroe County Sheriff's Office that he was in its custody from March to July 1997.  *See* ECF No. 1171 at 7-10.  Defendant argues that the government failed to disclose these records in violation of *Brady*.  ECF No. 1170 at 19.  The

---

[6] In the alternative, Defendant appears to be also raising a claim based on the government's use of perjured testimony.  He cites the DOCCS records, Gonzalez's grand jury testimony, the testimony of Maria Francos, and statements by Mike DiFiore as evidence of Gonzalez's perjury at trial.  ECF No. 1170 at 16-17; ECF No. 1340 at 44-46.  Defendant has shown neither that this evidence is "newly discovered" within the meaning of Rule 33(b)(1), nor that he has a viable claim on the merits.  A defendant raising a claim based on perjured testimony must show that the government "knew or should have known of the perjury at [the] time of trial," *United States v. Nash*, 338 F. App'x 96, 99 (2d Cir. 2009) (summary order), and mere "inconsistencies between witness's statements before grand jury and at trial do not warrant inference that [the] government knowingly used false testimony."  *United States v. Bortnovsky*, 879 F.2d 30, 33 (2d Cir. 1989) (citing *United States v. Hemmer*, 879 F.2d 30, 33 (1st Cir. 1984)).  Moreover, "even a direct conflict in testimony does not in itself constitute perjury."  *United States v. Gambino*, 59 F.3d 353, 365 (2d Cir. 1995).

nondisclosure was prejudicial, in Defendant's view, because it undercuts the theory that he was involved in a single drug conspiracy extending from 1993 to 2011.  ECF No. 1170 at 18.

Defendant's claim is untimely under Rule 33(b)(1).  A motion grounded on newly discovered evidence must be filed within three years after the verdict or finding of guilty.  Fed. R. Cim. P. 33(b)(1).  Defendant's supplemental motion was filed more than three years after the verdict, *see* ECF Nos., 871, 1170, and cannot relate back to the original motion.  *See United States v. Azzara*, No. 02-CR-1446, 2008 WL 4702740, at *1 (S.D.N.Y. Oct. 23, 2008) (collecting cases).  Moreover, Defendant has not shown due diligence to obtain this evidence: he admits that he had been aware of these records since before trial.  *See* ECF No. 1118 at 21 (discussing dispute between "AUSA Rodriguez" and his trial counsel over records).  Defendant offers no explanation as to why he waited nearly four years after the verdict to obtain these records.

On the merits, Defendant's *Brady* claim fails because these documents were not suppressed.  Prior to trial, Defendant was certainly aware of the time period in which he was in custody in 1997, and its relevance to the issues at trial.  There is no reason to believe that Defendant was unable to obtain publicly available records confirming his custody prior to trial. *See United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("Documents that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation.").  And even without the records themselves, Defendant was aware of the essential facts regarding his 1997 custody so as to take advantage of the evidence at trial.  *Id.* ("[E]vidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." (internal quotation marks and brackets omitted)).

Furthermore, the alleged withholding of the documents was not prejudicial.  At trial, it was stipulated that Defendant was incarcerated from July 1997 through February 1998, as well as during other periods within the dates of the overarching conspiracy.  *See* ECF No. 995 at 12-13; ECF No. 1171 at 16.  Defendant unsuccessfully argued that those periods of incarceration weakened the government's theory of a continuing conspiracy.  *See, e.g.*, ECF No. 995 at 10-13.  Defendant's "new" evidence, which simply clarifies the dates of one period of incarceration, is cumulative of all of the other evidence establishing that there were "extensive periods of time in which [Defendant] was incapacitated by incarceration."[7]  ECF No. 995 at 12-13; *see also United States v. Djibo*, No. 15-CR-88, 2019 WL 1517086, at *9 (E.D.N.Y. Apr. 8, 2019) ("Evidence is not 'material' if it is cumulative of what was already presented at trial.").

### vi.  PACER Records

In May 2020, Defendant received from his private investigator PACER records.  *See* ECF No. 1170 at 20.  In Defendant's view, these records show that one of his alleged suppliers was indicted in May 2000 for drug conspiracy.  ECF No. 1171 at 23-37.  Defendant alleges that, in the supplier's criminal case, there was no evidence implicating Defendant in the supplier's "drug dealing."  ECF No. 1170 at 20.  Defendant asserts that he would have been charged in the supplier's case if there had been evidence implicating him.  The fact that he was "never charged" proves that the alleged supplier was not "[his] drug supplier."  *Id.*

Defendant's claim fails on the merits.  Defendant has not demonstrated that these publicly available documents were suppressed by the government, *see Payne*, 63 F.3d at 1208, and his claim of prejudice is speculative.  The absence of evidence is not evidence of absence,

---

[7] Defendant also suggests that this evidence undermines the government's explanation for the inconsistencies between the testimony of Phillip Barnes and Matilde Delgado.  *See* ECF No. 1170 at 19.  It does not: the viability of the government's argument—that Plaza enlisted Barnes (and a new supplier) once Defendant was incarcerated—is the same whether Defendant was incarcerated in March or in July of 1997.  *See* ECF No. 989 at 73.

and Defendant's mere speculation about what a different criminal case would have revealed about his involvement with his supplier is insufficient to satisfy *Brady*'s materiality standard. *See Birney*, 686 F.2d at 105-06.

### vii.   Jeffrey Davis

Defendant contends that the government failed to disclose a benefit it provided to cooperator Jeffrey Davis.  *See* ECF No. 1340 at 48-49.  Based on an audio recording of a March 4, 2011 hearing that he recently obtained, Defendant asserts that the government helped Davis by ensuring that he remained on pretrial release despite an alleged violation of his pretrial-release conditions.  *See id.*; ECF Nos. 71, 74.

Defendant has not demonstrated that this audio recording was newly discovered under Rule 33(b)(1), in the sense that he could not have "with due diligence" discovered it "before or during trial."  *Ulbricht*, 748 F. App'x at 431 (internal quotation marks omitted).  The hearing, minute entry, and order granting Davis's release are all public.  *See* ECF Nos. 71, 74.  Although a portion of the hearing was "off the record," Judge Feldman disclosed on the record that all the parties, including the government, urged him to give Davis another opportunity on release.   In fact, Defendant's counsel cross-examined Davis about his cooperation at trial, his violation of his pretrial-release conditions, and the fact that, despite his violation, he was "allowed to remain on pretrial release."[8]   ECF No. 983 at 13.  Thus, Defendant and his counsel appear to have been aware of the arrangement, or, at the very least, of the essential facts allowing them to investigate

---

[8]      Q. And despite the fact that you had violated the terms of your pretrial release, you were allowed to remain on pretrial release?
A. I was put into a outpatient program and a halfway house.
Q. While you were on pretrial release?
A. Yeah.
Q. Was that helpful to you?
A. Yes, it was.

ECF No. 983 at 13.

the issue of Davis's continued pretrial release after his alleged violation.  Defendant offers no reason why he waited until 2020 to seek out the publicly available recording of the hearing.  *See* ECF No. 1340 at 48.  Defendant's evidence is not newly discovered for purposes of Rule 33(b)(1).

Nor does Defendant have a viable *Brady* claim.  There was no suppression, as Defendant's attorney cross-examined Davis on this issue.  *See* ECF No. 983 at 13; *United States v. Torres*, 129 F.3d 710, 717 (2d Cir. 1997).  Even if Defendant believes that additional evidence regarding this alleged "benefit" would have been helpful for cross-examination, he cannot establish suppression given his own lack of diligence to obtain the publicly available recording.  *See Payne*, 63 F.3d at 1208.  Moreover, evidence of an additional benefit that Davis received is cumulative of the other evidence submitted regarding Davis's cooperation.  *See* note 8, *supra*; *see also United States v. Spinelli*, 551 F.3d 159, 165 (2d Cir. 2008) ("[I]f the information withheld is merely cumulative of equally impeaching evidence introduced at trial, so that it would not have materially increased the jury's likelihood of discrediting the witness, it is not material.").

### viii.  Pablo Plaza

Citing inconsistent testimony regarding the death of Ryan Cooper, Defendant argues that the government elicited perjured testimony from confidential informant Daniel Young.  *See* ECF No. 1170 at 21-22.  This claim is untimely and therefore not cognizable under Rule 33(b)(1), as Defendant was aware of all of the relevant facts underlying his claim prior to trial.  *See id.*  He was required to file his motion "within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2); *see also James*, 712 F.3d at 107.

24

### c.   Motions for Discovery, for *Brady* Material, and for Evidentiary Hearing

In connection with his claims, Defendant moves for various types of discovery and requests that the Court hold an evidentiary hearing.  *See, e.g.*, ECF No. 1118 at 19; ECF No. 1170 at 24-25; ECF No. 1208 at 3-4; ECF No. 1226; ECF No. 1340 at 57, 58; ECF No. 1358; ECF No. 1359; ECF No. 1360.  Although "the standard governing the availability of discovery in connection with a defendant's motion for a new trial pursuant to Rule 33 is far from settled," some courts have "refer[red] to the standards governing discovery in habeas corpus petitions as an analogous collateral proceeding."  *United States v. Williams*, No. 02-CR-1372, 2017 WL 3613661, at *3 (S.D.N.Y. Aug. 21, 2017) (emphasis omitted).  "Discovery is available in connection with a habeas corpus petition only upon a showing of 'good cause' which requires the petitioner to present specific allegations that give the Court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief."  *Id.* (internal quotation marks and ellipsis omitted).  Because—as discussed above—Defendant's grounds for relief under Rule 33 are either untimely, speculative, or lack merit, Defendant has not demonstrated the discovery is warranted under the circumstances.  *See Gonzalez v. United States*, No. 12-CV-5226, 2013 WL 2350434, at *3 (S.D.N.Y. May 23, 2013) (noting that "[g]eneralized statements regarding the possible existence of discoverable materials" is insufficient to warrant discovery); *Batista v. United States*, No. 14-CV-895, 2016 WL 4575784, at *1 (E.D.N.Y. Aug. 31, 2016) ("[A] court may choose to deny a request for discovery should a petitioner simply be engaging in a 'fishing expedition' without showing specific facts that would support [his claims].").  For the same reasons, no evidentiary hearing is necessary. *See United States v. White*, 972 F.2d 16, 22 (2d Cir. 1992).

### d. Summary

For the reasons stated herein, Defendant's Rule 33 motions, as well as all subsidiary motions and requests related to that motion are DENIED WITH PREJUDICE.  This Decision & Order fully and finally disposes of Defendant's Rule 33 motion and all related motions and requests.

## III.   Section 2255

Defendant moves to vacate his convictions under Section 2255, identifying twenty grounds for relief.  ECF No. 1341.  The Court discusses each ground in turn.[9]

### a.  Legal Standard

Relief "is generally available under [Section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  "In ruling on a motion under [Section] 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)).  Ineffective assistance of counsel is a claim that may be raised through a § 2255 motion.  *See United States v. Vallejo-Zamora*, 827 F. App'x 156, 156-57 (2d Cir. 2020) (summary order).

---

[9] In a letter received on January 26, 2023, Defendant requested that the Court stay consideration of his Section 2255 petition until his Rule 33 motion, and related discovery and hearing requests, are resolved.  ECF No. 1361.  Given the lack of merit to all of Defendant's motions and requests, there is no need to adjudicate the motions separately, and the request to stay is DENIED.

b.  **Discussion**

i.  **Grounds 1 through 7 and Portions of Ground 19**

Grounds 1 through 7, as well as portions of Ground 19, are summarily denied.  Defendant raised all of these claims on direct appeal.   For some—namely, Grounds 4 and 7—he re-raises them with little substantive change.  *Compare* ECF No. 1341 at 20-22, 31-34, *with* Brief for Defendant James Dean Kendrick, No. 16-4286, ECF No. 256 at 29-33, 36-43 (July 1, 2019) [hereinafter "Defendant's Appellate Brief"].  The Second Circuit rejected those claims, either expressly or summarily.  *See generally United States v. Plaza*, 826 F. App'x 60 (2d Cir. 2020) (summary order).  It is well-established that "[S]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal." *Williams v. United States*, 712 F. App'x 50, 52 (2d Cir. 2017) (summary order).  Accordingly, this Court may not "revisit" these issues "already decided on direct appeal," and Grounds 4 and 7 must be denied. *Jones v. United States*, 543 F. App'x 67, 71 (2d Cir. 2013) (summary order).

With respect to Grounds 1, 2, 3, 5, and 6, as well as portions of 19, Defendant simply recasts claims he raised on direct appeal as claims for ineffective assistance of counsel.  For example, on direct appeal, Defendant argued that he could not be convicted on Counts 14 and 15 given that the Court had dismissed Count 1.  *See* Defendant's Appellate Brief at 34-36.  The Second Circuit rejected that claim summarily.  *See Plaza*, 826 F. App'x at 66.  In Ground 1 of his petition, Defendant now contends that his defense counsel was ineffective for "failing to research and properly argue" this issue.  *See* ECF No. 1341 at 14-15.  So it is with Grounds 2, 3, 5, 6, and portions of 19.[10]

_____

[10] *Compare* ECF No. 1341 at 15-17 (arguing that, with respect to Investigator Politowski's testimony, defense counsel was ineffective for "failing to protect" Defendant's confrontation rights under *Bruton*), *with* Defendant's Appellate Brief at 27-28 (arguing that Investigator Politowski's testimony "was a clear violation of [Defendant's] Sixth Amendment right to confrontation).  *Compare* ECF No. 1341 at 17-20 (asserting that defense counsel failed to

Defendant cannot obtain relief on these claims simply by recasting them in terms of ineffective assistance of counsel.  Rather, the Second Circuit's unfavorable rulings on these issues "compels the conclusion" that any ineffective-assistance claims premised on such issues are "meritless."  *Pendergrass v. United States*, No. 16-CV-5714, 2019 WL 7333816, at *16 (S.D.N.Y. Oct. 30, 2019).  This is because Defendant cannot show either the objectively deficient representation or ensuing prejudice necessary to sustain an ineffective-assistance claim.  *See, e.g.*, *Shapiro v. United States*, 828 F. App'x 82, 83-84 (2d Cir. 2020) (summary order) (in context of Section 2255 petition, defendant failed to show prejudice from counsel's failure to present expert testimony, where the Second Circuit had "explained on direct appeal that presentation of such evidence would not have made a difference"); *Jones*, 543 F. App'x at 71 (where, on direct appeal, Second Circuit rejected claim that district court erroneously failed to give multiple-conspiracies instruction, defendant's claim "fare[d] no better when reframed as an ineffective assistance of counsel argument" in his Section 2255 petition).  Ultimately, "[f]ailure to make a meritless argument does not amount to ineffective assistance," *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999), *abrogated on other grounds by Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003), and therefore Defendant cannot demonstrate an ineffective-assistance claim based on his counsel's failure to raise arguments that the Second Circuit has already rejected.

In sum, Defendant cannot obtain relief on Grounds 1 through 7 and portions of 19.

---

properly research and argue that "aiding and abetting liability" is excluded "from the Section 848(e)(1)(A) Statute"), *with* Defendant's Appellate Brief at 48-50.  *Compare* ECF No. 1341 at 22-25 (claiming that defense counsel failed to properly object and argue that *Pinkerton* charge impermissibly "broadened the basis for conviction" on Counts 14 and 15), *with* Defendant's Appellate Brief at 46-48.  *Compare* ECF No. 1341 at 25-30 (asserting that defense counsel failed to protect Defendant's *Bruton* rights in several respects), *with* Defendant's Appellate Brief at 22-34.  *Compare* ECF No. 1341 at 63-67 & n.5 (identifying alleged sentencing errors that counsel failed to challenge), *with* Defendant's Appellate Brief at 34-36, 62.

### ii.  Ground 8

Defendant posits that, because Count 4 charges Defendant with possession with intent to distribute heroin over a period of time—"[f]rom in or about 2007, through and including in or about October 2009," ECF No. 268 at 4—it essentially alleges a "separate and distinct" conspiracy from that charged in Count 1.  ECF No. 1341 at 38.  Defendant argues that, consequently, the jury's guilty verdict on Count 4 "establishes" that there were "multiple conspiracies in this case," and his trial counsel, Bobbi Sternheim, should have moved for a judgment of acquittal as to Counts 1, 2, 14, and 15—which were premised on a single conspiracy between 1993 and 2011.  *See id.*

Defendant is incorrect that Count 4 alleges a separate and distinct drug conspiracy.  Count 4 alleges a substantive drug offense, not a drug conspiracy under 21 U.S.C. § 846.  *See* ECF No. 268 at 4.  The government was permitted to charge Defendant both for the overarching narcotics conspiracy that persisted from 1993 to 2011, as well as individual drug transactions occurring during and in furtherance of that conspiracy.  *See United States v. Hicks*, 5 F.4th 270, 276 (2d Cir. 2021) ("[A] charge of a wide-ranging narcotics conspiracy consisting of numerous transactions is . . . sufficiently distinct from a charge of a substantive violation based on a single sale that the prohibition against double jeopardy permits both a prosecution for conspiracy and a prosecution based on the substantive sale." (internal quotation marks omitted)).  Accordingly, the jury's verdict on Count 4 does not "establish" multiple conspiracies that would warrant dismissal of Counts 1, 2, 14, and 15.  Attorney Sternheim did not err by failing to raise this issue.[11]  *See Arena*, 180 F.3d at 396.  Defendant is not entitled to relief on this ground.

---

[11] In the alternative, Defendant argues that he must be resentenced on Count 4 because the jury impermissibly aggregated the drug quantities.  *See* ECF No. 1390 at 20.  Because such relief would not "shorten the amount of time he will spend incarcerated," and will not otherwise prejudice him, the Court declines to consider that issue.  *Kassir v. United States*, 3 F.4th 556, 561 (2d Cir. 2021) (discussing concurrent sentence doctrine).

### iii.   Ground 9

Defendant contends that Attorney Sternheim erroneously failed to call Maria Franco at trial.  ECF No. 1341 at 39-41.  Maria Franco was an unindicted co-conspirator, who helped Defendant bag heroin and whose house was used by Defendant to distribute heroin.  *See* ECF No. 978 at 49-52.  Maria Franco is the mother of Franklyn Gonzalez and the mother in law of Jose Troche, who Defendant killed for "snitching" on him.  *See, e.g.*, ECF No. 974 at 54; ECF No. 985 at 118.  Defendant states that Franco's testimony would have been exculpatory insofar as it would have undercut the government's claim that Jose Troche supplied Defendant's "customers with drugs" while he was in prison.  ECF No. 1341 at 40-41.  Defendant states that, shortly before she was scheduled to testify, Franco disclosed to the government that Jose Troche had a separate drug business from that of Petitioner.  *Id.* at 41.

Defendant has not established prejudice due to the failure to call Franco, who suffered from serious credibility issues.  She was alleged to be a participant in Defendant's criminal activities.  *See Lagares v. United States*, No. 15-CV-3391, 2016 WL 11651755, at *1 (S.D.N.Y. June 30, 2016) (no prejudice resulting from counsel's failure to call witness, where witness "would have been subject to substantial damaging impeachment based on his own criminal activity").  Moreover, Franco was the mother of another co-conspirator whom Defendant allegedly killed for "snitching."  Troche's fate would have hung ominously over Franco's testimony, making her "readily impeachable."  *United States v. Thornhill*, 34 F. Supp. 3d 334, 376 (S.D.N.Y. 2014) (collecting cases); *see also Rivera v. Scully*, No. 92-CV-6659, 1993 WL 454209, at *6 (S.D.N.Y. Nov. 2, 1993) (denying claim relating to counsel's failure to call petitioner's brother, as brother "was not a disinterested witness whose testimony would have turned the tide for [the defendant]," but was in fact an alleged "accomplice" who would have

been "easily impeached").  These facts undercut any claim that with Franco's testimony, there is "a reasonable probability that the outcome of the proceeding would have been different." *Lagares*, 2016 WL 11651755, at *1.

Defendant is not entitled to relief on Ground 9.

### iv.  Ground 10

In his tenth claim for relief, Defendant re-raises a claim from his Rule 33 motion— that the government knowingly relied on Franklyn Gonzalez's perjured testimony.  *See* ECF 1341 at 43-46.  That argument is denied for the same reasons discussed above.  *See* note 6, *supra*.

### v.  Ground 11

Defendant asserts that he could not be convicted on Count 10—possession and discharge of a firearm in furtherance of a drug trafficking crime—because a drug conspiracy under 21 U.S.C. § 846 could not serve as the predicate "drug trafficking crime."  ECF No. 1341 at 46-48. Defendant alleges that Attorney Sternheim provided ineffective assistance by failing to raise this issue.  *See id.*

Defendant is incorrect.  18 U.S.C. § 924(c)(2) defines "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)."  The Second Circuit has held that a "narcotics conspiracy unquestionably satisfies § 924(c)."  *United States v. Heyward*, 3 F.4th 75, 82 (2d Cir. 2021).  Accordingly, Attorney Sternheim cannot be deemed ineffective for failing to raise a meritless issue.  *See Arena*, 180 F.3d at 396.

### vi.  Ground 12

With respect to Count 10, Defendant argues that the jury verdict form was too open-ended, as it gave the jury too much discretion to decide which charged or uncharged crime constituted the predicate "drug trafficking crime."  ECF No. 268 at 8.  He therefore asserts that

31

Attorney Sternheim was ineffective when she failed to request a special verdict form "containing interrogatories for Count Ten." ECF No. 1341 at 48.

Contrary to Defendant's argument, the jury was not given such open-ended discretion to determine the relevant predicate drug trafficking crime. Consistent with the second superseding indictment, the Court instructed the jury that it could *only* find Defendant guilty if, *inter alia*, it found beyond a reasonable doubt that Defendant had used, carried, or discharged a firearm in relation to the narcotics conspiracy charged in Count 1. *See* ECF No. 996 at 109-10. Although, as Defendant points out, there were various firearms (and criminal conduct involving firearms) referenced during trial, that fact did not mandate more granular special interrogatories than those the Court provided. *See* ECF No. 871 at 11-12. The Second Circuit has held that "the jury need not be unanimous as to a specific gun that a defendant possessed, used, or carried in violating § 924(c)," *United States v. Johnson*, 659 F. App'x 674, 679 (2d Cir. 2016) (summary order), and has never held that "unanimity is required" with respect to "the occasion when [the defendant] used a gun." *United States v. Pizzaro*, 797 F. App'x 607, 612 (2d Cir. 2020) (summary order); *see also Richardson v. United States*, 526 U.S. 813, 817 (1999) ("[A] federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime."). In any case, the Court's unanimity instructions were sufficient to allay that concern. *See Pizzaro*, 797 F. App'x at 612 ("[E]ven were unanimity required, this Court has time and again held that a general charge regarding unanimity is ordinarily sufficient to protect the defendant's right to a unanimous verdict." (internal brackets and quotation marks omitted)); ECF No. 996 at 144, 148, 150.

Because the Court's verdict form was not erroneous in the respects that Defendant identifies, Attorney Sternheim was not ineffective for failing to request a special verdict form. *See Arena*, 180 F.3d at 396.

### vii.  Ground 13

At his plea hearing in May 2014, co-conspirator Pablo Plaza affirmed under oath that he had taken part in the murder of Ryan Cooper.  The version of events he described was that Defendant and Paul Plaza confronted Cooper at Pablo Plaza's apartment for discussing the Santos murder.  *See* ECF No. 1051 at 16.  Defendant proceeded to beat Cooper with a metal rod while Paul Plaza held Cooper.  *Id.*  Pablo Plaza assisted Defendant and Paul Plaza in cutting up Cooper's body "into pieces," putting his body into "several garbage bags," and disposing of the bags in the City of Rochester.  *Id.* at 16-17.

At Defendant's trial, Daniel Young presented a slightly different narrative.  He testified that, in  summer 1999, Pablo Plaza disclosed the killing to him.  *See* ECF No. 960 at 136.  In this retelling, Defendant had "paid" Pablo Plaza to kill Cooper, and Pablo Plaza had done so by "smash[ing] him in the head with a hammer" and "chopp[ing] him up in the bathtub." *Id.* at 136-37.  Thereafter, he and unidentified others placed Cooper's body parts in garbage bags and "spread [them] around the city." *Id.* at 137.  Pablo Plaza did not disclose to Young "who was with him" at the time of the killing. *Id.*

Defendant argues that the discrepancies between the two narratives establish that the government elicited "perjured testimony" from Young, and he faults Attorney Sternheim for failing to pursue this issue.  ECF No. 1341 at 52, 54.  The Court is not persuaded, as Defendant has not shown that Young's testimony constituted perjury.  "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false

testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001). The narratives are, in significant respects, consistent: both connect Cooper's death to Defendant and, specifically, to Defendant's concern that Cooper would disclose the Santos murder. Both suggest that the murder involved multiple people; that Cooper was beaten to death; and that his body was mutilated before being disposed of. The discrepancies concerning who wielded the blunt object and beat Cooper—and what that blunt object was—are the kinds of "[s]imple inaccuracies or inconsistencies in testimony" that do not rise to the level of perjury. *Id.*; *see also United States v. Sanchez*, 969 F.2d 1409, 1415 (2d Cir. 1992) ("Differences in recollection alone do not add up to perjury.").

This ground for relief is denied.

### viii.  Ground 14

Defendant argues that Attorney Sternheim erroneously failed to impeach Vasquez-Mobley about the inconsistencies between her trial testimony and affidavits she signed to support search warrants in 2000. ECF No. 1341 at 55. At trial, Vasquez-Mobley testified that in October 1999, she set up several "controlled buys" of crack cocaine in the area of Murray Street. ECF No. 969 at 128. She targeted Defendant and several of his co-conspirators, whom she had observed dealing drugs in the area. *See id.* at 121, 128. Ultimately, those controlled buys occurred between an undercover officer and Angelo Cruz. *See id.* at 129-39. In her warrant affidavits, Vasquez-Mobley stated that, in August 1999, a confidential informant had informed her that Defendant was selling "eight balls" of cocaine out of his apartment on Dewey Avenue. ECF No. 1390-1 at 105. Defendant faults Attorney Sternheim for not impeaching Vasquez-Mobley on these matters, writing: "[H]ow [] could [Vasquez-Mobley] testify claiming that she

had an under-cover officer attempt to make a drug buy, of two dime bags, from Petitioner, on Murray Street, in October 1999 when she learned in August of 1999 that Petitioner only sold quantities of 8-balls [] or higher, and that Petitioner did not sell on Murray Street." ECF No. 1341 at 55-56. In other words, Defendant takes the position that Vasquez-Mobley could not have honestly targeted him in the controlled buys on Murray Street in October 1999 because, as of August 1999, she knew that Defendant was "only" selling larger amounts of cocaine out of his apartment on Dewey Avenue. *Id.*

Attorney Sternheim did not err in failing to pursue this line of questioning. Vasquez-Mobley's affidavit states that she learned from a confidential informant that Defendant was selling "eight balls" out of his Dewey Avenue apartment, *not* that he was *only* selling eight balls and *only* from that location. ECF No. 1390-1 at 105. The reason Vasquez-Mobley targeted Defendant in the area of Murray Street was because, as she testified, she had observed Defendant (and his co-conspirators) selling drugs in that area. ECF No. 969 at 117, 121; *see also* ECF No. 1390-2 at 8 (in surveillance log, indicating that Defendant "drop[ped] male Indian off at [] Murray St."). There was nothing implausible about Vasquez-Mobley's claim that Defendant sold drugs from two different locations (and in different quantities). Defendant's assertion that Vasquez-Mobley's testimony amounted to perjury is not supported by the record. *See* ECF No. 1341 at 55.

Relief is denied on this ground.[12]

---

[12] Defendant also suggests that, in 2004, while he was on work release, Vasquez-Mobley contacted the "Rochester Correctional Facility" and had him sent back to prison. *See* ECF No. 1341 at 56. Defendant alleges that the audio recording of the Vasquez-Mobley's phone call was not disclosed during discovery, and he argues that Attorney Sternheim should have sought to obtain the records to prepare for cross-examination of Vasquez-Mobley. *See id.* Because Defendant does not articulate any theory for what these records might have shown or how they could have impeached Vasquez-Mobley, he can satisfy neither *Strickland* prong. *See McPherson v. Greiner*, No. 02-CV-2726, 2003 WL 22405449, at *25 (S.D.N.Y. Oct. 22, 2003).

### ix.   Ground 15

As he did in connection with his Rule 33 motion, Defendant argues that the government impermissibly relied on perjured testimony from Daniel Young at trial.  *See* ECF No. 1341 at 57-58.  The government responds, and the Court agrees, that this argument is procedurally barred. *See* ECF No. 1369 at 15.

Since "a § 2255 motion is not a substitute for direct appeal," collateral review is not afforded to claims that a defendant "failed properly to raise on direct review unless the [defendant] shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence."  *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012).  Defendant could have raised this argument on direct appeal: he was in possession of all of the relevant facts during his appeal—in fact, he discussed Young's alleged perjury in his reply brief.  *See* Reply Brief of Defendant James Dean Kendrick, No. 16-4286, ECF No. 361 at 5 n.2, 9-10 (Feb. 27, 2020).  Defendant offers no excuse for his failure to raise this issue on direct appeal.  Nor does he contend that he is actually innocent.  *See Peeples v. United States*, No. 17-CR-6032, 2023 WL 195295, at *6-7 (W.D.N.Y. Jan. 17, 2023) (discussing standard).

Accordingly, this claim is procedurally barred and must be denied.

### x.   Ground 16

Defendant contends that Attorney Sternheim erred by failing to request special interrogatories "as to exactly when, within the 18-year drug conspiracy, the drug quantities involved [in Count 1] reached the threshold amount necessary" under 21 U.S.C. § 841(b)(1)(A). ECF No. 1341 at 59.  This was necessary, in Defendant's view, because he could not be convicted of Count 14 or Count 15 unless the government established "the necessary drug quantities . . . prior to, or at the time of[,] either one of the charged homicides."  *Id.* at 60.

Even accepting Defendant's claim that the government needed to establish drug quantity by the date of the murders, the Court's jury instructions were sufficient.  The Court instructed the jury that the government was required to prove beyond a reasonable doubt that Defendant "was engaging in the offense of the conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, 280 grams or more of cocaine base, and one kilogram or more of heroin."   ECF No. 996 at 125, 130.   It clarified that the government must prove that the "conspiracy involved at least 5 kilograms of cocaine, 280 grams of cocaine base or one kilogram of heroin."  *Id.* at 126, 131 .  And the Court instructed that the jury would be required to find that the murders "occurred because of or as part of the defendant's engaging in the conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, 280 grams or more of cocaine base, and one kilogram or more of heroin."  *Id.* at 127, 132.   Therefore, the Court's instructions made clear to the jury that it could only find Defendant guilty of Counts 14 and 15 if the requisite conspiracy existed at the time of the murders.   Because special interrogatories were therefore unnecessary, Attorney Sternheim did not err when she failed to request them.

### xi.  Ground 17

Defendant contends that defense counsel erroneously failed to challenge the vehicle stop and searches that occurred in 2000.  *See* ECF No. 1341 at 60-62.  Defendant alleges that he told counsel[13] to "file motions challenging the legality of the stop" and a search warrant related to the Ridgeway Avenue residence.  *Id.* at 61.  Because Defendant's argument for suppression lacks merit, Defendant has failed to satisfy the first *Strickland* prong.  *See Petrie v. United States*, No. 14-CV-507, 2015 WL 12696069, at *8 (N.D.N.Y. June 29, 2015) ("Counsel's failure to make a meritless suppression motion does not support a claim of ineffective assistance.").

---

[13] Defendant does not identify which of his attorneys he discussed the matter with.

One day before the vehicle stop, a search warrant was issued authorized police to search (1) the Dewey Avenue apartment, (2) Defendant's vehicle, *and* (3) Defendant's person.  ECF No. 1390-1 at 113-14 ("And **AUTHORIZATION AND DIRECTION** to search the following person: JAMES D. KENDRICK, described as a male white, DOB 06-03-74, approximately 5'6", 135 lbs. who is the resident of 1567 Dewey Avenue, Rochester NY.").  The affidavit in support of the search warrant proffered numerous facts relating to Defendant's drug-dealing, including that he would drive to other locations to conduct drug sales.  *See* ECF No. 1390-1 at 105-11.  On May 4, 2000, at approximately 1:25 p.m., police observed Defendant leave his Dewey Avenue apartment carrying a shopping bag.  *See* ECF No. 969 at 90-92.  Defendant drove his vehicle to the Ridgeway residence, where he left his vehicle and got into a white Honda civic with two other passengers.  *Id.* at 93.  They proceeded to Bob Evans before returning to Defendant's apartment and dropping off one of the passengers.  Then, the white Honda civic left—with Defendant as a passenger—and was soon pulled over by uniformed officers.  *Id.* at 94.

So long as the search warrant was valid, officers were permitted to pull over the white Honda civic in which Defendant was a passenger in order to execute the warrant.  *See United States v. O'Connor*, 658 F.2d 688, 691 (9th Cir. 1981) ("At the time of the stop, the agents possessed a warrant to search the person of [defendant] and the validity of the warrant is not contested.  It is obvious that in executing the warrant, the agents could stop the vehicle in which they reasonably thought [defendant] was a passenger."); *United States v. Colon*, No. 18-CR-244, 2021 WL 4994318, at *5 (W.D.N.Y. Mar. 31, 2021) (where judge issued warrant authorizing search of defendant's person, officers were permitted to conduct traffic stop of defendant); *United States v. Medina*, No. 15-CR-62, 2016 WL 3676223, at *2-3 (D. Utah July 7, 2016) (concluding that police were entitled to pull defendant over and search his person where search

warrant authorized search of defendant's residence and person).  Defendant does not identify any fault with the "Dewey Avenue" search warrant.  The affidavit in support of the search warrant describes several controlled buys involving Defendant and details Defendant's practice of travelling to conduct drug sales.  *See* ECF No. 1390-1 at 105-11.  Because Defendant develops no explanation as to how the "Dewey Avenue" warrant lacked probable cause—and does not even contend that officers' reliance on the warrant was objectively unreasonable, *see United States v. Johnson*, 804 F. App'x 8, 11 (2d Cir. 2020) (summary order) (discussing good faith exception to the warrant requirement)—he has failed to demonstrate that defense counsel acted unreasonably by failing to move to suppress on the basis of the legality of the stop.[14]  ECF No. 1341 at 61-62.

Defendant does challenge the sufficiency of the search warrant for the Ridgeway Avenue residence, which Vasquez-Mobley applied for and obtained on May 4, 2000, soon after Defendant was stopped.  *See* ECF No. 969 at 161.  Defendant does not identify a meritorious suppression issue, however.  As an initial matter, he does not proffer facts to support standing to challenge the search of the Ridgeway Avenue location, which was his girlfriend's residence.  *See* ECF No. 969 at 158; ECF No. 1341 at 61-62; *see also United States v. Marshall*, No. 11-CR-381, 2012 WL 5511645, at *1 (W.D.N.Y. Nov. 9, 2012) ("A defendant seeking to suppress

---

[14] Defendant relies heavily on favorable rulings issued by the Appellate Division, Fourth Department with respect to his state conviction. *See* ECF No. 1341 at 61-62.  Those rulings do not change the Court's analysis.  They did not address the warrant issue, and, regardless, the government would not be bound by them in conjunction with any suppression hearing in this case. *See generally United States v. Davis*, 906 F.2d 829 (2d Cir. 1990).

Furthermore, the Court notes that the driver's consent to search the vehicle is irrelevant because, while Defendant has standing to challenge the legality of the stop, he has no standing to challenge the legality of the driver's consent or subsequent search. *See United States v. Santillan*, 902 F.3d 49, 62-63 (2d Cir. 2018) (passenger had standing to challenge "prolongation of the traffic stop" but not to "challenge the search of the car," insofar as he had "no reasonable expectation of privacy in a car being driven by and registered under the name of a man he claimed not to know very well").

evidence must demonstrate by a preponderance of the evidence that he had a reasonable expectation of privacy in the location or items searched.").

On the merits, Defendant fails to demonstrate that, given the good faith exception, suppression would have been the appropriate remedy assuming *arguendo* that the warrant lacked probable cause. *See United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011) (discussing the "exception to the exclusionary rule for evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" (internal quotation marks omitted)). This exception to the exclusionary rule does not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Id.* at 100.

Here, Defendant suggests that the second warrant affidavit impermissibly "bootstrapped" the first warrant affidavit because the former copied much of the latter, except that a few additional pages were included to describe the events of May 4, 2000 and Defendant's connection to the Ridgeway Avenue address. *See* ECF No. 1390-1 at 125-26; ECF No. 1390-2 at 1-2. The Court sees nothing inherently suspect about this copying, so long as the underlying factual proffer remains true and pertinent. *Cf. United States v. Akinyemi*, 38 F.3d 609 (D.C. Cir. 1994) (table op.) (acknowledging that search warrant affidavits are "usually drafted in the midst and haste of a criminal investigation" and stating that "mere duplication of part of a prior affidavit . . . is insufficient to demonstrate [a reckless disregard for the truth]" (internal quotation marks omitted)). Defendant's additional contention that police failed to alert the issuing judge that a prior search warrant had been issued and failed to uncover drugs is incorrect. The second

affidavit explicitly states that "prior to the writing of this warrant a search warrant was executed at 1567 Dewey Avenue."  ECF No. 1390-2 at 2.  It also lists what was found: "Identification from [Defendant] was located at 1567 Dewey Avenue.  Also located at Dewey Avenue was Acetone and Procaine which are agents used to process cocaine."  *Id.*  By implication, it is clear that drugs were not found at the location.  Finally, to the extent Defendant contends that the warrant was "so facially deficient that reliance upon it is unreasonable," *Clark*, 638 F.3d at 100, the affidavit was not so "bare bones" with respect to Defendant's connection to the Ridgeway Avenue address "as to render official belief in [the] existence [of probable cause] entirely unreasonable." *Id.* at 105.

Therefore, because Defendant has not identified meritorious suppression issues, his ineffective-assistance claim premised on such issues fails.

### xii.  Ground 18

Defendant contends that he did not receive effective assistance of counsel in connection with his motion to suppress the fruits of the October 2009 stop, because counsel failed to obtain the "computer generated records" related to the stop.  ECF No. 1341 at 62-63.  For the reasons stated above, *see* Section II(b)(ii), *supra*, those records do not support a viable argument for suppression, and consequently, Defendant cannot show prejudice for counsel's failure to obtain them.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must [] prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").  Absent prejudice, Defendant's ineffective-assistance claims fails.

### xiii.  Ground 19

Defendant claims that Attorney Sternheim erred by failing to object to a two-level sentencing guideline increase for maintaining "a premises for the purpose of manufacturing or distributing a controlled substance."   U.S.S.G.  §  2D1.1(b)(12);  *see* ECF  No.  1341  at  66.[15]  Defendant argues that this enhancement could not be applied to him because the enhancement did not exist in the guidelines in effect in October 2009—*i.e.*, the time at which he was alleged to have unlawfully maintained the premises of 87 Thomas Street for the purpose of bagging heroin for distribution.  ECF No. 1341 at 66.

This argument does not entitle Defendant to relief.  While he is correct "that the two-level enhancement for maintaining a premises became effective after he committed his offense," the "2012 Guidelines also reduced the base offense level applicable to the drug quantity found in [his] case by two levels."  *United States v. Holley*, 638 F. App'x 93, 98 (2d Cir. 2016) (summary order).  "Accordingly, although the calculation would have been different, the total offense level and applicable Guidelines range under both versions of the Guidelines is the same, and there is no *ex post facto* violation."  *Id.*

### xiv.  Ground 20

Defendant suggests that, for purposes of Count 1, the government was required to prove "a single violation meeting the 841(b)(1)(A) drug quantity."  ECF No. 1341 at 67.  He cites *United States v. Rowe*, 919 F.3d 752 (3d Cir. 2019) as support.  *Rowe* did not involve a conspiracy offense, however, but the offense of "distributing heroin, and possessing it with intent to distribute."  *Rowe*, 919 F.3d at 759.  For the latter, "separate acts of distribution of controlled substances are distinct offenses," such that the government is required to prove "a single

---

[15] The other arguments that Defendant raises in Ground 19 are denied for the reasons stated in Section III(b)(i), *supra*.

distribution involving" the requisite drug quantity.  *Id.*  By contrast, with respect to a narcotics conspiracy, the "quantity of narcotics . .  throughout the entire conspiracy" may be aggregated, "even if that sum total was transacted in a series of smaller sales."  *United States v. Pressley*, 469 F.3d 63, 64 (2d Cir. 2006).  Defendant is not entitled to relief.[16]

### c.  Discovery and Evidentiary Hearing

Defendant's requests for discovery and/or an evidentiary hearing in connection with his Section 2255 petition are DENIED.  Given the Court's rulings, Defendant has not demonstrated good cause for discovery, *see Khan v. United States*, No. 20-CV-945, 2021 WL 101974, at *4 (S.D.N.Y. Jan. 12, 2021), and an evidentiary hearing is unnecessary because the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b).

## IV.    Other Motions

Defendant has filed numerous motions, supplemental motions, responses, replies, letters, and requests over the last several years since the jury verdict.  It would be inefficient and unnecessary to exhaustively catalogue and discuss each filing.  To the extent that the Court has not expressly discussed one of Defendant's requests—whether that be a substantive claim, a request for discovery, a request to supplement, a request for a further stay, etc.—the Court hereby notifies Defendant that all such issues, motions, and requests, even if not expressly addressed herein, are hereby DENIED WITH PREJUDICE.  To the extent the Court had previously directed the government to provide answers, documents, or other responses, any such

---

[16] Defendant also argues that Attorney Sternheim erroneously failed to object to the admission of "body-wire recordings" related to the conspiracy that arose after May 2010, because, at that time, he alleges that he had withdrawn from the conspiracy.  ECF No. 1390 at 46; ECF No. 1341 at 67.  Defendant has not persuaded that the Court that his self-serving jail calls and letters would have precluded the admission of the evidence, and therefore he has not demonstrated prejudice "under *Strickland*'s two-pronged test."  *Phillip v. United States*, 804 F. App'x 91, 93-94 (2d Cir. 2020) (summary order).

orders are hereby VACATED.  Defendant has not shown any plausible claim justifying further proceedings or relief.

## CONCLUSION

Defendant's Rule 33 motion (and all related requests for discovery, evidentiary hearings, stays, or other relief), his Section 2255 petition (and all related requests for discovery, evidentiary hearings, stays, or other relief), and any independent motions for discovery, evidentiary hearings, stays, or other relief, are DENIED WITH PREJUDICE.  All prior orders directing the government to respond to any discovery requests are hereby VACATED.  The Court hereby notifies Defendant that all outstanding motions and requests for relief, even if not explicitly addressed herein, are DENIED WITH PREJUDICE.  With the issuance of this Decision & Order, there are no pending motions before the Court.  With respect to the Section 2255 petition. the Court declines to issue a certificate of appealability because Defendant failed to make a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and that leave to appeal *in forma pauperis* is denied.  Defendant must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of this Order.  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Federal Rule of Appellate Procedure 24.

IT IS SO ORDERED.

Dated: June 7, 2023
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

44